1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEANLIM YITH and SEAK LEANG YITH, | Case No. 1:14-CV-01875-LJO-SKO |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION TO AMEND. |
| JEH JOHNSON, et al., | |
| Defendants. | |
| | (Docs. 32, 36) |

## INTRODUCTION

Before the Court in the above-styled and numbered cause of action are (1) a motion to dismiss, filed on September 9, 2015, by Defendants Jeh Johson, in his capacity as Secretary for the United States Department of Homeland Security ("DHS"), Leon Rodriguez, in his capacity as Assistant Secretary for the DHS and Director for United States Citizenship and Immigration Services ("USCIS"), Mari-Carmen Jordan, in her capacity as Assistant Secretary for USCIS responsible for the Sacramento field office and the Fresno sub-office, Jonathan Crawford, in his capacity as the Field Office Director for the Fresno sub-office of USCIS (collectively, "DHS Defendants"), and Loretta Lynch, in her capacity as Attorney General of the United States and Secretary of the United States Department of Justice (collectively, "Defendants" or "the Government") (Doc. 36), opposed by Plaintiffs Seanlim Yith and Seak Leang Yith (Doc. 41); and (2) a motion to amend, filed on August

20, 2015, by Plaintiffs (Doc. 32), opposed by Defendants (Doc. 37). The motions are appropriate for resolution without oral argument. *See* Local Rule 230(g). Having considered the record in this case, the parties' briefing, and the relevant law, the Court will GRANT Defendants' motion and dismiss this case without prejudice, and will DENY Plaintiffs' motion to amend.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are siblings and citizens of Cambodia. Doc. 1 (Complaint) ¶¶ 2-6, 8. Both Plaintiffs currently reside in Fresno County, and were residents of Fresno County at all times relevant to this action. *Id.* ¶ 2, 5. Plaintiffs entered the United States on or about March 26, 2006. *Id.* ¶¶ 18, 49. They obtained lawful permanent resident ("LPR") status in the United States, on or about April 3, 2006, through their father, Neth Yith. *Id.* ¶¶ 4, 7. Plaintiffs' LPR status will expire sometime in 2016. *Id.* ¶¶ 78, 97.

On or about February 4, 2011, Seanlim filed a Form N-400, Application for Naturalization with USCIS. *Id.* ¶ 2. Seanlim's naturalization interview was initially scheduled for July 20, 2011, but was cancelled due to "unforeseen circumstances." *Id.* ¶¶ 19, 20. On or about December 21, 2012, Seak Leang filed a Form N-400, Application for Naturalization with USCIS. *Id.* ¶ 5. Seak Leang's interview was initially scheduled for June 20, 2013, but was also cancelled on account of "unforeseen circumstances." *Id.* ¶¶ 50-51.

On or about February 20, 2014, Plaintiffs first contacted USCIS through their attorney to inquire about the status of their applications. *Id.* ¶ 80. They received no response from USCIS until April 2014, and were only then told that the adjudication of their applications was "delayed." *Id.* On May 15, 2014, a USCIS officer emailed Plaintiffs that their cases were "pending" and that a "small percentage of cases involving unresolved issues that may result in adjudication delays," and that "[USCIS] [is] unable to determine at this time when the review process will be completed." *Id.* ¶ 86. The email continued, "We understand that your clients may be frustrated . . . However, USCIS must balance individual inconvenience against broader issues of public safety and national security." *Id.* Thereafter, Plaintiffs periodically requested information regarding the status of their naturalization applications, but were "rebuffed" every time, and USCIS did not provide any time frame as to when their applications might be adjudicated. *Id.* ¶ 88.

On October 9, 2014, Plaintiffs again contacted USCIS through their attorney. *Id.* ¶ 89. They received a response on October 24, 2014, in which Defendant Crawford advised Plaintiffs through a subordinate, "I do not have an update. Your clients' cases are both actively pending with USCIS. Please refer back to my May 15, 2014 e-mail as to possible reasons. For these very same reasons we are unable to determine when the review process for the naturalization applications will be completed." *Id.*

On November 25, 2014, Plaintiffs filed the original complaint in this case, over three years after Seanlim filed her naturalization application and nearly two years after Seak Leang filed his application. Doc. 1. Plaintiffs cited 8 U.S.C. § 1447(b), which authorizes naturalization applicants to apply to the relevant district court for a hearing if there is a failure to make a determination 120 days after a naturalization "examination" occurs. *Id.*, at 2. Plaintiffs alleged that DHS Defendants declined to interview them because DHS Defendants had conducted an "examination" of them in their absence, and "did not wish to be held accountable to federal law requiring [DHS Defendants] to adjudicate a citizenship application within 120 days after examination." *Id.* ¶¶ 21, 52. Plaintiffs additionally alleged that DHS Defendants delayed the adjudication of their naturalization applications because one or more persons who assisted their father in obtaining his LPR status was affiliated with former USCIS official Billy Nelms, who has since been prosecuted by the United States Department of Justice for bribery and witness-tampering with regard to certain applications made by Cambodian citizens, or to Nelms' wife Sokhon, who is of Cambodian origin. *Id.* ¶¶ 35, 45, 66, 70. Plaintiffs claim that the investigation of the United States government into possible misconduct by any member of their family began at the same time as the government's investigation of Billy Nelms, and was connected to the unexplained cancellation of their naturalization interviews. *Id.* ¶ 37.

Moreover, Plaintiffs alleged that they are eligible for naturalization and that they have done everything required of them to obtain adjudication from USCIS on their naturalization applications. *Id.* ¶¶ 34, 65. Plaintiffs argued that even if they were found to have committed misconduct with

regard to their LPR status, that it is unreasonable for Defendants not to have completed the investigation of Plaintiffs. *Id.* ¶¶ 46, 71. With regard to Defendant Lynch[1], Plaintiffs claimed that the Department of Justice has "borne the responsibility for and have in fact exercised the responsibility for conducting whatever investigation of [Plaintiffs] was deemed necessary such that, after examination, [they] could either be approved or disapproved as a candidate for United States citizenship." *Id.* ¶ 30, 61. For these reasons, the complaint requests that the Court order the DHS Defendants complete adjudication of their naturalization applications in a certain time frame, and for Defendant Lynch to cooperate to that end, or that the Court exercise its own jurisdiction to adjudicate their naturalization applications (claims one and two). *Id.* at 20-21. In the alternative, the complaint requests that the Court issue a writ of mandamus to DHS Defendants and Defendant Lynch requiring adjudication of their naturalization applications (claims three and four). *Id.*, at 20-21. Plaintiffs also seek attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *Id.*, at 22.

Defendants filed their first motion to dismiss on February 13, 2015, arguing that because Plaintiffs had not yet been "examined" within the meaning of 8 U.S.C. § 1447(b), there was no basis for invoking this Court's jurisdiction. Doc. 19, at 5. However, on February 24, 2015, USCIS issued interview notices in connection to Plaintiffs' naturalization applications, scheduling their interviews for March 10, 2015. Doc. 23. In light of this development, on March 2, 2015, the parties stipulated to hold the matter in abeyance, and to file status reports by May 1, 2015. *Id.*

Plaintiffs' interviews took place as scheduled. Doc. 27, at 3. At their respective interviews, Plaintiffs, accompanied by counsel, confirmed that they had never met their U.S. citizen step-mother Sarin Meas, who had petitioned for them to enter the United States, and whose relationship to them forms the basis of their status in the United States. Doc. 36-1, at 3, 7; Doc. 39, at 1. Additionally, Plaintiffs were told, ostensibly for the first time, that in 2011, the DHS had obtained an adverse statement from Ms. Meas. Doc. 42, at 6. Plaintiffs and counsel were not shown the actual statement at the time of the interview. *Id.* The interviewing officer told Plaintiffs that they

---

[1] The original complaint named Eric Holder as a Defendant in this case. Doc. 1 ¶ 14. Pursuant to Federal Rule of Civil Procedure 25(d), the Court terminated Eric Holder and substituted Loretta Lynch as a Defendant. Doc. 46.

were otherwise eligible for naturalization "but for the fact that USCIS believed that the marriage leading to their qualifying relationship was a sham." *Id.*

On March 24, 2015, USCIS issued notices of intent to deny Plaintiffs' naturalization interviews. Doc. 26, at 1. According to these notices, USCIS intended to deny Plaintiffs' applications on the grounds that they are ineligible for naturalization under section 316 of the Immigration and Nationality Act ("INA"). Doc. 36-1, at 3, 7. Specifically, the notices alleged that the marriage between Plaintiffs' father and Ms. Meas "was entered into for the sole purpose of granting [Plaintiffs' father] an immigration benefit," which under the law, is "invalid from its inception and cannot under any circumstances be the basis of a step-relationship under [INA § 101(b)(1)(B)]." *Id.* Furthermore, the notices quoted a sworn statement taken from Ms. Meas by a DHS official, dated September 6, 2011, which reads in its entirety as follows:

> I admit that I married Yith Neth in Fresno, CA for the soul [sic] purpose to get his permanent residency. I was young at the time and my parents pressured me into marrying him. I've never lived with him and I met him through my father [sic] previous boss at CB Market. The owner asked my father to ask me if I can marry him. We went to fresno [sic] and got a marriage license. He paid my parents $6000.00 at that time. The next time I saw him, I was told to drive to Santa Ana Immigration office. We were interviewed by a male officer and he told me that he knows and feels this marriage is a fraud. He explained the consequences and I decided not to go through with the process. That was the last time that I was with Yith Neth. So, he left to Fresno that same day. We did not have no kind of contacts [sic] whatsoever ever since. I don't remember signing any petitions to allow his childrens [sic] to come to the U.S. I remember signing some immigration forms, but I don't remember which paper. I admit that it was a fake marriage from day 1. And I regret it. I don't know any immigration offices or if Yith Neth knew any. I've never met Yith [sic] children and it was never the intentions [sic] for them to live with me.

*Id.* Plaintiffs responded to those notices on April 24, 2015, arguing that Ms. Meas's statement is insufficient to demonstrate their ineligibility for naturalization. Doc. 27, at 2; Doc. 39-1. To allow USCIS time to review Plaintiffs' responses and issue a decision, the parties stipulated to hold the matter in abeyance for an additional sixty days, and file status reports on or by June 30, 2015. *Id.*

On June 30, 2015, Plaintiffs and Defendants filed separate status reports. Docs. 27, 29. Plaintiffs indicated that they intended to seek leave to amend or supplement their complaint. Doc. 27, at 4. Defendants indicated that USCIS anticipated adjudicating Plaintiffs' applications before July 8, 2015, 120 days after Plaintiffs were interviewed, and the date that the district court's

jurisdiction under 8 U.S.C. § 1447(b) could properly be invoked. Doc. 29, at 2.

On July 24, 2015, the Court ordered Defendants to notify the Court as to whether Plaintiffs' naturalization applications had been adjudicated. Doc. 30. On July 31, 2015, Defendants filed a notice of administrative action to inform the Court that USCIS had initiated removal proceedings against Plaintiffs. Doc. 31.

On August 20, 2015, Plaintiffs filed a motion to amend their original complaint, arguing that because USCIS scheduled and held interviews for Plaintiffs on March 10, 2015, some of the allegations in the initial complaint are now outdated and need to be modified or eliminated. Doc. 32. Defendants opposed this motion. Doc. 37. Because of this motion, the Court administratively terminated Defendants' first motion to dismiss. Doc. 35.

On September 9, 2015, Defendants filed the pending motion to dismiss, citing three grounds for dismissal. Doc. 36. First, Defendants contend that the Court should dismiss this action, because under their interpretation of 8 U.S.C. § 1429, the initiation of removal proceedings against Plaintiffs divests this Court of subject matter jurisdiction. *Id.*, at 6-8. Second, Defendants argue the case is now moot because of the pending removal proceedings. *Id.*, at 8. Finally, Defendants argue the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the pendency of removal proceedings against Plaintiffs renders the Court unable to provide Plaintiffs with the relief they have requested. *Id.*, at 9-10. Defendants attached to their motion copies of the Forms I-862, Notices to Appear ("NTA"), dated July 7, 2015, issued to each respective Plaintiff, purporting to place both Plaintiffs in removal proceedings under section 240 of the INA. Doc. 36-2.

Plaintiffs filed an opposition to Defendants' motion on September 23, 2015. Doc. 41. They first argue that Defendants' motion should be denied because the motion is addressed only to the original complaint, and that their motion to amend reveals "fatal flaws" in Defendants' motion. *Id.*, at 8. Plaintiffs additionally contend the NTAs issued to them are not "warrants of arrest" within the meaning of 8 U.S.C. § 1429, and that the NTAs do not preclude the adjudication of Plaintiffs' naturalization applications. *Id.*, at 20-22.

On November 17, 2015, the Court ordered that Defendants submit evidence that Plaintiffs' NTAs have been filed with the Immigration Court, thereby officially commencing removal

proceedings against Plaintiffs pursuant to 8 C.F.R. § 1239.1. Doc. 44. Defendants filed this evidence on November 20, 2015. Doc. 45. Defendants filed copies of NTAs bearing a "received" stamp, indicating that Seanlim's NTA was filed at the San Francisco Immigration Court on July 28, 2015, and that Seak Leang's NTA was filed at the San Francisco Immigration Court on August 3, 2015. *Id.*, Attachment A. Moreover, Defendants filed a copy of the Notice of Hearing in Removal Proceedings, dated November 19, 2015, directing Plaintiffs to appear for a master calendar removal hearing at the San Francisco Immigration Court on June 8, 2016. *Id.*, Attachment B. Plaintiffs filed a response on November 30, 2015. Doc. 47.

## II.     MOTION TO DISMISS

### A. Legal Standard

#### 1. Federal Court Jurisdiction

Federal courts are "courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). They possess only the power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986).

A federal court is presumed to lack subject matter jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action due to "lack of subject matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

The present motion is a facial attack, because Defendants "[contend] that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction." *See Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.*, __ F. Supp. 3d __, 2015 WL 2185121, at *4 (E.D. Cal. May 8, 2015) (internal citation and quotation omitted). In a facial attack, "the plaintiff is entitled to safeguards similar to those applicable when a 12(b)(6) motion is made." *Id*. "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id*.; *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, we take the allegations in the plaintiff's complaint as true.").

Also embedded in Article III's limitations on federal court jurisdiction is the doctrine of mootness. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the litigation. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). That is, if events subsequent to the filing of the case can solve the parties' dispute, the court must dismiss the case as moot, because the court does not have constitutional authority to decide moot cases. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086–87 (9th Cir.2011).

## 2. Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562; *see also Starr*, 652 F.3d at 1216 ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief"). To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.  Discussion**

    **1.  Judicial Review of Naturalization Cases**

        Following the direction of other federal courts that have considered scenarios similar to the case at bar, the Court first examines the relevant statutes and developments in immigration law before turning to the issues presented in Defendants' motion. *See e.g., De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1045 (9th Cir. 2004); *Gonzalez v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 243, 257-58 (3d Cir. 2012); *Ajlani v. Chertoff*, 545 F.3d 229, 235-36 (2d Cir. 2008); *Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004); *Lau v. Holder*, 880 F. Supp. 2d 276, 280

(D. Mass. 2012); *Lucaj v. Dedvukaj*, 749 F. Supp. 2d 601 (E.D. Mich. 2010). These cases uniformly include an explanation of the Immigration Act of 1990, which shaped the jurisdictional framework under which this case must be analyzed. *See id.*

Prior to 1990, the authority to naturalize individuals seeking United States citizenship was vested in the Judiciary[2], while the authority to remove individuals found to have violated this country's immigration laws was vested in the Executive Branch, through the Attorney General. *De Lara Bellajaro*, 378 F.3d at 1045; *Ajlani*, 545 F.3d at 229; *Zayed*, 368 F.3d at 905. As a result, because the law did not specify a hierarchy between naturalization and removal proceedings, and the two processes were mutually exclusive, it was possible to give rise to what the Supreme Court deemed "a race between the alien to gain citizenship and the Attorney General to deport him." *Shomberg v. United States*, 348 U.S. 540, 544 (1955). "[B]oth the deportation and naturalization processes [could] proceed along together until either petitioner's deportation or naturalization *ipso facto* terminated the possibility of the other occurring." *Id.* at 534. This dilemma prompted Congress to enact § 1429, which provided that "no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding . . ." 8 U.S.C. § 1429 (1952). "Thus, from 1950 to 1990, federal law clearly forbade district courts from ruling on naturalization applications while removal proceedings were pending against the alien applicant." *Ajlani*, 545 F.3d at 236. Courts, including the Ninth Circuit, have interpreted § 1429 as indicative of congressional intent that removal proceedings and final removal orders are to take precedence over naturalization applications. *De Lara Bellajaro*, 378 F.3d at 1045-46; *Perdomo-Padilla v. Ashcroft¸* 333 F.3d 964, 970 (9th Cir. 2003); *see also Gonzalez*, 678 F.3d at 259; *Zayed*, 368 F.3d at 905 ("the history of the Immigration Act [of 1990] does suggest that Congress intended removal proceedings to have priority over naturalization proceedings"); *Ngwana v. Attorney General of the United States*, 40 F. Supp. 2d 319, 320 (D. Md. 1999).

The Immigration Act of 1990 abrogated the authority of district courts to naturalize non-citizens and conferred the "*sole authority* to naturalize persons as citizens of the United States" on

---

[2] In 1988, 8 U.S.C. § 1421 provided, in relevant part, "[e]xclusive jurisdiction to naturalize persons as citizens of the United States is conferred upon . . . District courts of the United States . . ."

the Attorney General. Immigration Act of 1990, Pub. L. No. 101-649, (codified at 8 U.S.C.

§ 1421(a)) (emphasis added). Accordingly, Congress conformed 8 U.S.C. § 1429 to reflect this

change, and to read as follows:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this Chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act.

8 U.S.C. § 1429 (1990). That district courts no longer have jurisdiction to grant or deny

naturalization applications in the first instance has been acknowledged by the Ninth Circuit in

*Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 932-33 (9th Cir. 2007), overruled on other

grounds by *Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1118 (9th Cir. 2013), and *De Lara

Bellajaro*,378 F.3d at 1046; *see also Gonzalez*, 678 F.3d at 257-58 (describing the Immigration Act

of 1990's effect on district court jurisdiction over naturalization applications).

However, the Immigration Act of 1990 did reserve for district courts jurisdiction to review

naturalization cases under two circumstances: denial and delay. *Ajlani*, 545 F.3d at 236; *Lucaj*, at

608. If a naturalization application is denied, 8 U.S.C. §1421(c) permits the applicant to seek a *de

novo* review of this denial in district court. *De Lara Bellajaro*, 378 F.3d at 1046. Relevant here, if

there is a delay in a naturalization adjudication, §1447(b) permits the applicant to seek relief in

district court. *Ajlani*, 545 F.3d at 237-38. Specifically, §1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title [on a naturalization application] before the end of the 120-day period after the date on which the examination is conducted through such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (1990).

In 2003, the former Immigration and Naturalization Service, under the Attorney General,

was dissolved, and many of its functions were absorbed by a new agency, the Department of

Homeland Security ("DHS"), which is headed by the Secretary of Homeland Security. *See*

Homeland Security Act of 2002, Pub. L. 107-296, §§ 402(3), 441(2), 451(b)(2), 116 Stat. 2135,

2178, 2192, 2196 (codified at 6 U.S.C. §§ 202(3), 251(2), 271(b)(2)). DHS houses a sub-agency, USCIS, which, *inter alia*, adjudicates naturalization applications. 8 U.S.C. § 271(b)(2); *Lucaj*, 749 F. Supp. 2d at 607; *see also Matter of Hidalgo*, 24 I&N Dec. 103, 105-06 (BIA 2007) (the "jurisdiction to determine an alien's eligibility for naturalization ... now lies exclusively with the DHS"). Thus, although 8 U.S.C. § 1429 continues to read that "no application for naturalization shall be considered by the Attorney General," because USCIS now has authority over naturalization applications, courts have interpreted 8 U.S.C. §1429 as precluding USCIS from adjudicating naturalization applications while removal proceedings are pending, despite the statutory text of 8 U.S.C. §1429 not reflecting these changes in removal and naturalization proceedings. *See, e.g.*, *Hernandez de Anderson*, 497 F.3d at 933 (noting that the authority to naturalize persons as United States citizens was transferred from the Attorney General to the DHS); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 339 (5th Cir. 2007) ("8 U.S.C. § 1429 precludes consideration by the USCIS once removal proceedings have begun"); *Ajlani*, 545 F.3d at 231 n.2 ("our references throughout this opinion to the authority of the 'Attorney General' in the areas of naturalization and removal should be understood to extend to his statutory successor as well as to those immigration agencies to which these officials have delegated some of this authority"); *Robertson-Dewar v. Mukasey*, 599 F. Supp. 2d 772, 782-83 (W.D. Texas 2009) ("The CIS may not consider a [naturalization] application when removal proceedings are pending"). However, the Attorney General, through its sub-agency the Executive Office for Immigration Review, continues to retain authority over removal proceedings. 8 U.S.C. § 1252(a)(2)(B) & (g) (2015); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

### 2. Plaintiffs are in Removal Proceedings

As a preliminary matter, the Court notes that Defendants' supplemental filing, dated November 20, 2015, unequivocally establishes that Plaintiffs are in removal proceedings. Doc. 45. 8 C.F.R. § 1239.1(a) provides that "[e]very removal proceeding conducted under section 240 of the Act to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court." Defendants submitted evidence that the NTAs issued to both Seanlim and Seak Leang have been filed with the San Francisco Immigration Court, as both

documents bear a "received" stamp. *Id.*, Attachment A. In their response to Defendants' filing,

Plaintiffs argue that the evidence is insufficient because Defendants have not produced "any papers

showing that there has ever been a court filing of a Notice to Appear addressed <u>to</u> Seak Leang

Yith." Doc. 47, at 5 (emphasis in original). However, under the regulations, all that is required to

commence removal proceedings is the filing of the NTA with the immigration court. *See* 8 C.F.R.

§ 1239.1; 8 C.F.R. § 1003.14(a) ("Jurisdiction vests and proceedings before an Immigration Judge

commence, when a charging document is filed with the Immigration Court by the Service.").

Moreover, Defendants' second attachment, a Notice of Hearing regarding both Plaintiffs informing

them of a master calendar hearing before the San Francisco Immigration Court on June 8, 2016, is

further evidence that removal proceedings are ongoing against Plaintiffs. *See* Doc. 45, Attachment

B. Accordingly, the Court may now proceed to the merits of Defendants' motion, which hinges

upon on the fact that Plaintiffs are currently in removal proceedings. *See* Doc. 36.

### 3.  Subject Matter Jurisdiction

Defendants first argue that under § 1429, this Court lacks subject matter jurisdiction because

Plaintiffs are in removal proceedings. *Id.*, at 7-9. However, the Ninth Circuit's position on the

statutory framework surrounding judicial review of naturalization proceedings, clearly set forth in

*De Lara Bellajaro*, determined that district courts *do* retain subject matter jurisdiction over

naturalization applications in spite of pending removal proceedings and the effect of 8 U.S.C.

§1429. 378 F.3d at 1045-47. Accordingly, the Court finds that Defendants' first argument has been

squarely foreclosed by *De Lara Bellajaro*.[3]

In *De Lara Bellajaro*, the Ninth Circuit was confronted with the issue of how the provision

for judicial review in § 1421(c) for a naturalization denial was affected by the initiation of removal

---

[3] The Ninth Circuit's rejection of Defendants' argument has also been adopted by this District in a case substantially similar to this case, *Maxwell v. Holder*, 2015 WL 2358698 (E.D.Cal May 15,2015), report and recommendation adopted in full, *Maxwell v. Holder*, 2015 WL 4478115 (E.D. Cal July 21, 2015). Notably, Defendants cited *Maxwell* in support of their alternative argument that this case should be dismissed for failure to state a claim. Doc. 36, at 10. Defendants have nevertheless have attempted to advance a legal argument that has been rejected by not only the Ninth Circuit and the Eastern District, but several other appellate and district courts. *Gonzalez,* 678 F.3d at 258; *Klene*, 697 F.3d at 668-69; *Zayed,* 368 F.3d at 906; *Martinez*, 2015 WL 234528 at *5-6. The Court cautions Defendants' counsel, who was also the attorney of record in *Maxwell*, that under Federal Rule of Civil Procedure 11(b), an attorney must certify that "the claims, defenses, and other legal contentions are warranted by existing law or *by a nonfrivolous argument by extending, modifying, or reversing existing law or for establishing new law*" (emphasis added). Defendants have not done so in this case. The Court has limited time and fewer resources to consider legal arguments that are unwarranted by existing law.

proceedings against the applicant and the language of § 1429 stating that "no application for naturalization shall be considered by the Attorney General" during the pendency of removal proceedings. 378 F.3d at 1046. *De Lara Bellajaro* adopted the Sixth Circuit's holding that § 1429 "[limits] the scope of review and the relief available," but does not "[strip] district courts of jurisdiction solely because removal proceedings are pending." 378 F.3d at 1046 (citing *Zayed*, 368 F.3d 902). This finding was based the statutory language, as § 1421(c) "plainly confers jurisdiction to review the denial of an application for naturalization on district courts," and "[n]othing in the text limits the jurisdiction so conferred to review of denials when there is no removal proceeding pending." *Id.* "By the same token, the text of §1429—which does constrain consideration of naturalization applications during the pendency of a removal proceeding—clearly applies to the Attorney General. There is no hint in the language of § 1429 that it also applies to the courts." *Id.* The court then found that there was "no textual basis for concluding that jurisdiction vested in district courts by § 1421(c) is divested by § 1429." *Id.*

Here, the relevant statute is § 1447(b), which like §1421(c), is a clear grant of jurisdiction to the district court. *United States v. Hovsepian*, 359 F.3d 1144, 1159-61 (9th Cir. 2004); *accord Klene*, 697 F.3d at 668 ("Congress has authorized district courts to decide whether aliens are entitled to naturalization. No more is necessary for subject matter jurisdiction"). Section 1447(b) applies in the event of a failure to make a determination on a naturalization application 120 days after the naturalization examination is conducted. *Id.* In *Hovsepian*, the Ninth Circuit stated that under § 1447(b), USCIS is required to "make a decision regarding a naturalization application within 120 days of the [USCIS]'s initial interview of the applicant," and moreover, that the statute "specifies a consequence for failure to meet that deadline, namely, that the district court gains jurisdiction over the matter (upon the applicant's request)." *Id.*, at 1161. *Hovsepian* holds that both § 1421(c) and § 1447(b) give district courts the "final word" on naturalization applications that are either denied or delayed by USCIS, and that the district court's determination on the issue need not defer to the agency's findings or conclusions. *Id.* For this reason, the Court is not persuaded by Defendants' arguments that *De Lara Bellajaro* permits the Court only a "limited—and sole—slice" of jurisdiction to review naturalization denials, and that § 1447(b) is merely a "mechanism to avoid

delay," not "an additional grant of jurisdiction beyond the statutory bar of §1429." Doc. 36, at 8 (citing *Hovsepian*, 359 F.3d at 1162). In relying on *De Lara Bellajaro* in this manner, Defendants have neglected to consider the full extent of the holding in *Hovsepian*, which broadly construed the grant of jurisdiction conferred to district courts under § 1447(b). 359 F.3d at 1162-63. The Court does not only have jurisdiction to review naturalization denials, but also has jurisdiction over delayed applications. *See id.* In this case, Defendants have already conceded that the 120-day adjudicatory period was triggered when USCIS interviewed Plaintiffs on March 10, 2015. Doc. 36, at 7. Because more than 120 days have passed since Plaintiffs' interview on March 10, 2015 and there has not yet been a determination on their applications, the Court now has exclusive jurisdiction over Plaintiffs' naturalization applications. *See Hovsepian*, 359 F.3d at 1159-61.

Moreover, pursuant to the principles set forth in *De Lara Bellajaro*, § 1429 does not strip the Court of the jurisdiction conferred by § 1447(b). *See* 378 F.3d at 1046; *see also Klene*, 697 F.3d at 669 ("[§1429] tells the Attorney General to put an application aside once removal proceedings begin; it does not issue a similar directive to a court"). Like § 1421(c), nothing in the text of § 1447(b) "limits the jurisdiction so conferred" to the authority of district courts to hear cases of naturalization applicants who have experienced a delay of longer than 120 days following their interviews only when there are no removal proceedings pending against them. *See id.* As § 1421(c) and §1447(b) are the statutory bases for judicial review of naturalization applications, the Court is persuaded that *De Lara Bellajaro*'s analysis of §1421(c) also applies to §1447(b), and there is no authority to suggest that the jurisdictional framework would be different for one section, and not the other. *Maxwell v. Holder*, 2015 WL 2358698, at *4 (E.D. Cal May 15, 2015) report and recommendation adopted in full, *Maxwell v. Holder*, 2015 WL 4478115 (E.D. Cal July 21, 2015); *see also Hovsepian*, 359 F.3d at 1162 (". . .§1421(c) requires the district court to undertake the *same* analysis that it must make under § 1447(b). . .") (emphasis in original). Thus, § 1429 and the pendency of removal proceedings do not divest this Court of subject matter jurisdiction over Plaintiffs' case, and the motion to dismiss will not be granted on that basis. *See id.*; *De Lara Bellajaro*, 378 F.3d at 1046.

//

### 4.  Mootness

Defendants next argue that the case is moot[4] because § 1429 precludes the Court from naturalizing Plaintiffs or instructing USCIS to naturalize Plaintiffs, and Plaintiffs "no longer maintain any 'legally cognizable interest in the outcome' of this case." Doc. 36, at 9 (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted due to subsequent developments." *Cockcroft v. Kirkland*, 548 F. Supp. 2d 767, 778 (N.D. Cal. 2008) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  The Court will only dismiss a case as moot if "it is impossible . . . to grant any effectual relief whatever to the prevailing party." *See Knox v. Serv. Employees*, 132 S.Ct. 2277, 2287 (2012) (internal quotation marks omitted).

The Court finds that this case involves a "concrete, ongoing controversy" between Plaintiffs and USCIS about the bona fides of the marriage between their father and Ms. Meas, which a USCIS official has acknowledged is the only barrier to their eligibility to naturalize. *See Klene*, 697 F.3d at 668. This factual dispute, in turn, appears to be entwined with USCIS's failure to adjudicate Plaintiffs' naturalization application in a timely manner, enabling Plaintiffs to invoke this Court's jurisdiction under § 1447(b). *See Maxwell*, 2015 WL 2358698 at *4. Although the initiation of removal proceedings against Plaintiffs prevents any consideration of their naturalization applications at this time, the removal proceedings "do not necessarily mean that [Plaintiffs] will be adjudicated removable and thus ineligible for naturalization." *See id.* "While removal (or a removability finding) would undoubtedly moot this case by rendering [Plaintiffs] ineligible for naturalization, relief under § 1447(b) will be available if removal proceedings are resolved in [Plaintiffs'] favor." *Id.* Because at this time, there has been no such finding as to Plaintiffs' removability that permanently precludes the Court from affording effective relief under § 1447(b), and because it may be possible for removal proceedings to conclude in Plaintiffs' favor, the Court declines to dismiss this case on the ground of mootness. *See Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the

---

[4] Defendants additionally assert that Plaintiffs lack standing and appear to conflate standing and mootness. Doc. 37, at 6. However, because their motion makes no legal argument with regard to standing, the Court will not address standing in this order.

litigation, the case is not moot") (internal citations omitted).

### 5.   Failure to State a Claim

Defendants' final argument is that the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. 36, at 9. Their argument is premised upon the preclusive effect that §1429 has on the ability for this Court to grant Plaintiffs the relief they seek while removal proceedings are ongoing against them. *Id.*, at 10 (citing *Maxwell*, 2015 WL 2358698 at *4).

Although there is no binding precedent that directly controls the facts presented in this case, the Court finds that the reasoning behind Defendants' final argument is supported by the Second Circuit's decision in *Ajlani*, 545 F.3d at 229, which specifically addressed how § 1429 affects a district court's jurisdiction under § 1447(b). In *Ajlani*, the petitioner sought to compel USCIS to naturalize him, but the court held that "[§1429] does not permit an alien to state a claim for such relief under § 1447(b) while removal proceedings are pending against him." 545 F.3d at 238. This holding was grounded in a plain reading of the statutory text of § 1429, which clearly prohibits the Attorney General[5] from making a final determination on naturalization while a removal proceeding is pending against the applicant." *Id.* While there is no such language directed towards district courts in the text of § 1429, *Ajlani* found that § 1429 effectively limits a district court's authority to grant naturalization pursuant to § 1447(b) when removal proceedings are pending. *Id.*, at 239. It is well-established that §1447(b) gives district courts the jurisdiction to "determine" a naturalization matter or remand the matter to USCIS. *Hovsepian*, 359 F.3d at 1161. Nevertheless, a district court's authority to grant naturalization under § 1447(b) "could not be greater than that of the Attorney General, to whom Congress has granted 'sole authority to naturalize persons' in the first instance." *Ajlani*, 545 F.3d at 239 (quoting *Zayed*, 368 F.3d at 906). Accordingly, if §1429 precludes the Attorney General from granting naturalization to a non-citizen on account of pending removal proceedings, the said non-citizen cannot secure that relief from a district court pursuant to

---

[5] As discussed above, USCIS, not the Attorney General, now has the sole authority to naturalize. 8 U.S.C. § 271(b)(2). The text of § 1429 has not yet been amended to reflect this change. 8 U.S.C. § 1429 (2015). Although courts have generally acknowledged that §1429 now applies to USCIS, many of the cases analyzing the statute pre-date the creation of USCIS and therefore refer to the Attorney General in their analysis. Thus, while the Court is cognizant that USCIS now adjudicates naturalization, the Court will also refer to the Attorney General in this section for the sake of consistency.

1    § 1447(b). *See id.* The court then noted that "nothing in the language of §1447(b) requires the

2    conclusion that a district court may properly naturalize an applicant when the Attorney General is

3    statutorily precluded under § 1429 from doing so." *Id.* at 240. Accordingly, *Ajlani* concluded that

4    "[a]s much as the statutory framework permits district courts under § 1447(b) to evaluate

5    naturalization applications where USCIS improperly neglects to do so, it would seem to work

6    against the framework set forth in §§ 1447 and 1429 for the district court to undertake such an

7    evaluation where Congress has expressly prohibited the Attorney General from doing so." *Id.* To

8    permit a district court to consider a naturalization application while removal proceedings were

9    pending would run counter to congressional intent that prioritizes removal proceedings over

10   naturalization proceedings and would re-commence the race that Congress sought to end through

11   passing § 1429. *See id.* (citing *Shomberg*, 348 U.S. at 544).

12          Plaintiffs' opposition does not persuade the Court that it may grant any relief while removal

13   proceedings are pending. In their opposition[6], Plaintiffs argue that *Ajlani* was wrongly decided

14   because it largely relies on decisions that analyzed § 1421(c), instead of § 1447(b). However, while

15   *Ajlani* does indeed rely on § 1421(c) cases, the holding in *Ajlani* was based upon the panel's

16   independent analysis of the statutory text of § 1447(b) and the congressional intent behind

17   § 1429—which is ultimately the reason that this Court finds *Ajlani* persuasive here. 545 F.3d at

18   240. Plaintiffs further urge the Court to heed *Ajlani*'s dicta, which acknowledged that the possibility

19   that its holding might "allow the executive to initiate removal proceedings to obstruct judicial

20   consideration of naturalization applications." Doc. 41, at 18-19 (*citing Ajlani*, 545 F.3d at 240).

21   Plaintiffs argue that they have pleaded facts sufficient to establish that DHS Defendants have been

22   "obstructive" in this case. *Id.*, at 19. Nevertheless, the Court agrees with the panel in *Ajlani*, which

23   opined that such claims of abuse are "appropriately addressed on a case-by-case basis through

24   litigation to terminate unwarranted removal proceedings." 545 F.3d at 241 (citing *Ali v. Mukasey*,

25   524 F.3d 145, 147-50 (2d Cir. 2008)).

26

27   ---
     [6] Plaintiffs' opposition also argues that the Court should deny the pending motion to dismiss because this motion is
     addressed to their original complaint and that their motion to amend, filed prior to the instant motion to dismiss,
28   establishes the Court's subject matter jurisdiction over this case. Doc. 41, at 8-9. However, the Court has already
     established that this case should not be dismissed on the basis of subject matter jurisdiction.

1    Finally, Plaintiffs argue that § 1429 "only makes reference to a subset of removal

2    proceedings, those commenced 'pursuant to an arrest warrant,'" and that the NTAs issued to them

3    do not constitute "arrest warrants" within the meaning of §1429.[7]  Doc. 41, at 20-23; Doc. 47, at 5-

4    6. They further argue that 8 C.F.R. § 318.1, which states that "a notice to appear. . . shall be

5    regarded as a warrant of arrest," is ultra vires and unenforceable, and that this langue is "necessarily

6    inconsistent with the plain meaning" of § 1429 "because the regulation expands the class created by

7    the statute of a limited class of removal proceedings where the 'Attorney General' may no longer

8    act, into a universe of all removal proceedings." *Id*. This argument is rejected. Courts have

9    uniformly held that an NTA initiating removal proceedings is a "warrant of arrest" for the purposes

10   of §1429. *Klene*, 697 F.3d at 670; *Gonzalez v. Napolitano*, 684 F. Supp. 2d 555, 558 (D.N.J. 2010);

11   *Peprah v. U.S. Citizenship and Immigration Servs.*, 2012 WL 5306849, at *3 n.2 (N.D. Ill. 2012);

12   *Zhai v. U.S. Citizenship and Immigration Servs.*, 2004 WL 1960195, at *2 n.4 (N.D. Cal. 2004).

13   For these reasons, the Court is compelled to dismiss Plaintiffs' case for failure to state a

14   claim. Like the petitioner in *Ajlani*, Plaintiffs have requested that the Court order USCIS to

15   adjudicate their naturalization applications or that the Court itself adjudicate the applications. Doc.

16   1, at 20-21. Section 1429 precludes the Court from doing either while Plaintiffs are in removal

17   proceedings. *Ajlani*, 434 F.3d at 240. According to the Notice of Hearing in Defendants' November

18   17, 2015 filing, Plaintiffs are scheduled for their first removal hearing on June 8, 2016. Doc. 45,

19   Attachment B. Plaintiffs' counsel has stated that "the typical timetable for [removal proceedings] is

20   that individual hearings are scheduled for 2-3 years after the 'master calendar' (preliminary)

21   hearings." Doc. 33, at 4. Thus, the Court is mindful that Plaintiffs' removal proceedings may take

---

22   [7] In support of their argument, Plaintiffs contend that an NTA cannot be considered a "warrant of arrest" because an arrest

23   "is necessarily custodial in the sense that it entails the prerogative of the sovereign to take the subject of the warrant into
     involuntary custody, while a 'notice to appear' launching removal proceeding requires only that the person appear before
     a hearing." Doc. 41, at 22.  The Seventh Circuit addressed the custodial connotation of the term "warrant of arrest" as it

24   relates to a notice to appear issued in the immigration context in *Klene*, as follows:

25      [T]he agency has issued a regulation providing that a "notice to appear" in a removal proceeding sould be treated
        as a "warrant of arrest" too. 8 C.F.R. § 318.1. An agency can't rewrite statutory terms, but it can define its own

26      vocabulary. Since "arrest" does not imply custody even in police parlance (full custodial arrests are a subject of
        all arrests), there's no logical problem with an agency calling its official process a "notice to appear" and a

27      "warrant of arrest at the same time, without needing to issue two separate documents. On this, at least, all other
        courts of appeal agree, and we join them.

28   697 F.3d at 670.

years to resolve, and while they are pending, the Court may not grant them the relief they have

requested. *Ajlani*, 545 F.3d at 240. Accordingly, the Court finds that dismissal of this case is

appropriate. *See id.* In line with *Maxwell*, the dismissal shall be "without prejudice to refiling if and

when removal proceedings conclude in Plaintiffs' favor." 2015 WL 2358698 at *6.

### III.    MOTION TO AMEND

#### A.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with

the opposing party's written consent or the court's leave. The court should freely give leave when

justice so requires." Here, as Defendants oppose Plaintiffs' motion to amend (Doc. 37), the Court's

leave is required.

In the Ninth Circuit, a district court's discretion to grant leave "is to be applied with extreme

liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). That is

not to say, however, that leave should be given automatically. *Jackson v. Bank of Hawaii*, 902 F.2d

1385, 1387 (9th Cir. 1990); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The purpose of

Rule 15(a)(2) is "to facilitate decision on the merits, rather than on the pleadings or technicalities."

*Chudacoff v. Univ. Med. Ctr. Of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011). Nevertheless, the

"general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which

any amendment would be an exercise in futility or where the amended complaint would also be

subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998)

(citations omitted). "Futility alone can justify a court's refusal to grant leave to amend." *Novak v.*

*United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th

Cir. 1995).

#### B.  <u>Discussion</u>

Plaintiffs' motion to amend is essentially two-pronged. The first part of the motion seeks

leave to file an amended complaint that "update[s] the claims for relief stated in their first two

causes of action," in light of the fact that their naturalization interviews took place subsequent to

the filing of their initial complaint, and requests that the Court adjudicate their applications under

§ 1447(b) now that more than 120 days have passed since their interviews occurred. Doc. 32, at 6-

7; Doc. 34, at 15-16. The second part argues that Plaintiffs should be declared the prevailing parties on the third and fourth claims for relief in their original complaint for the purpose of their request for attorneys' fees under EAJA, because they claim that DHS Defendants scheduled their naturalization interviews as a result of this suit being filed. Doc. 32, at 7; Doc. 34, 18-22. Defendants oppose the motion to amend in its entirety. Doc. 37.

### 1. 1447(b)

Plaintiffs' motion to amend advances the same arguments contained in their opposition to Defendants' motion to dismiss—namely, that this Court has subject matter jurisdiction notwithstanding § 1429, and that because more than 120 days have elapsed since Plaintiffs were "examined" for the purposes of § 1447(b), the Court now has the authority to adjudicate their naturalization applications. Doc. 34, at 5-13. The Court also notes that the motion to amend, despite purporting to request new forms of relief, actually contains substantially the same requests as the original complaint—namely, that the Court adjudicate their naturalization applications. Doc. 33, at 21-22.

The Court has already determined that the pendency of removal proceedings against Plaintiffs precludes the Court from granting Plaintiffs the relief that they sought in the original complaint under § 1447(b). To reiterate, the Court may not adjudicate Plaintiffs' naturalization applications or order USCIS to do so while removal proceedings are pending against Plaintiffs. *Ajlani*, 545 F.3d at 239. Therefore, for the same reason the Court granted Defendants' motion to dismiss for failure to state a claim, the Court must now deny this portion of Plaintiffs' motion to amend as futile.  *See Novak*, 795 F.3d at 1020.

### 2. EAJA

Under EAJA, a court shall award fees and other expenses incurred by the "prevailing party" in any civil action brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The party seeking an award of fees and other expenses must submit an application showing that it is a prevailing party and state the "amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party

stating the actual time expended and the rate at which fees and other expenses were computed." *Hassine v. Johnson*, 53 F. Supp. 3d 1297, 1300-01 (E.D. Cal. 2014) (quoting 28 U.S.C. § 2412(d)(1)(A)).

Here, Plaintiffs' motion to amend requests a "ruling which is one element that would ultimately have to be established for an EAJA award, namely that they were the prevailing parties on the third or fourth claims for relief" because they seek to "preserve the right to prove their entitlement to fees based on their initial third and fourth Claims for Relief." Doc. 45, at 17, 21. Defendants oppose this request, arguing that Plaintiffs have not established that they are "prevailing parties." Doc. 37, at 2-3. However, a motion to amend is not the proper forum in which to make these arguments. In this case, as discussed above, there is no non-futile cause of action that would warrant amendment. The proper mechanism is, therefore, a post-judgment motion for fees under the EAJA. *See Hassine*, 53 F. Supp. 3d. at 1300-01; *see also* 28 U.S.C. § 2412(d)(1)(B). At this time, the Court expresses no opinion as to the merits of Plaintiffs' argument or Defendants' opposition, and declines to address the issue as to whether Plaintiffs may be deemed "prevailing parties" for the purposes of EAJA. To respond otherwise would be for this Court to provide an advisory opinion, which it declines to do.

## CONCLUSION AND ORDERS

The Court is sympathetic to the long delays in the naturalization process—delays that are unfortunately, not uncommon. *See, e.g. Aljabri v. Holder*, 745 F.3d 816, 817 (7th Cir. 2014) (nine years); *Wu v. Rodriguez*, ___F. Supp. 3d____, 2015 WL 5000254, at *2 (S.D. Ohio 2015) (seventeen months); *Hassine*, 53 F. Supp. 3d. at 1299-1300 (three years); *Lucaj*, 749 F. Supp. 2d at 603-04 (fourteen years); *Al-Mohammed v. U.S. Citizenship and Immigration Servs.*, 2007 WL 2004866, at *4 (E.D. Mich. 2007) (four years). While mindful that Defendants have valid concerns about national security and administering this country's process for the admission of individuals seeking to naturalize in an orderly and legal manner, the Court is nevertheless troubled and disappointed by the Government's actions and inactions in failing to be timely and forthright with Plaintiffs as to the Government's suspicions about the relationship between Plaintiffs' father and Ms. Meas. It is undisputed in the pleadings and briefs before this Court that the Government began

to question the lawfulness and status of each Plaintiff as early as 2011, yet did not inform Plaintiffs of their suspicions until March 10, 2015, and only after this lawsuit had commenced. The Government has provided no explanation for the protracted inaction and refusal to explain from when they discovered a perceived discrepancy in Plaintiffs' immigration statuses.  The Government's evasive responses to Plaintiffs' inquiries, and their failure to disclose this information to Plaintiffs for four years is insensitive at best. Doc. 42. The federal government of the United States should not only be held to a high standard to carry out its duties with integrity, but should hold itself to such a high standard. The facts and reasons that were available to the Government have not changed since the initial inquiry by Plaintiffs. Nothing about those facts or reasons explains either the secrecy or the delay, and that delay caused unnecessary emotional trauma to Plaintiffs, as well as wasted legal fees and costs to file the instant case. The Government can and should do better than it did in this factual scenario.

For these reasons:

1. Defendants' Motion to Dismiss (Doc. 36) is **GRANTED** and Plaintiffs' Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**;

2. Plaintiffs' Motion to Amend (Doc. 32) is **DENIED**.

**IT IS SO ORDERED**
**Dated: January 8, 2016**

**/s/ Lawrence J. O'Neill**
**United States District Judge**