# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEANLIM YITH and SEAK LEANG YITH,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN NIELSEN, et al.,<br><br>Defendants. | 1:14-cv-01875-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER RE MOTION TO REMAND TO USCIS AND MOTION FOR SANCTIONS<br><br>(ECF Nos. 78, 80) |

This matter is before the Court on Defendants'[1] motion for remand. Defendants request remand of this matter to United States Citizenship and Immigration Services ("USCIS") pursuant to 8 U.S.C § 1447(b) to consider Plaintiffs Seanlim Yith and Seak Leang Yith's naturalization applications. ECF No. 78. Plaintiffs filed an opposition and Defendants replied. ECF Nos. 79, 81. Plaintiffs also filed a motion for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 11 claiming that the filing of the motion to remand was vexatious and frivolous. ECF No. 80. Defendants filed in opposition to the motion for sanctions and Plaintiffs replied. ECF Nos. 82-83. The matters were taken under submission on the papers pursuant to Local Rule 230(g). For the reasons set forth below, the Court DENIES Defendants' motion for remand and DENIES Plaintiffs' motion for sanctions.

---

[1] Defendants in this matter are named in the first amended complaint as Kirstjen Nielsen, in her capacity as Secretary For Department Of Homeland Security; L. Francis Cissna, in his capacity as Director For U.S. Citizenship and Immigration Services; Monica E. Toro, in her capacity as District Director U.S. Citizenship and Immigration Services; and Lynn Q. Feldman, in her capacity as Director Of Fresno Office Of U.S. Citizenship and Immigration Services; and Jefferson B. Sessions III, in his capacity as Attorney General of the United States. ECF No. 69.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Court previously recounted a detailed factual and procedural background of the case in its prior Order, but reiterates the pertinent facts here. *See* ECF No. 50 at 2-7.

Plaintiffs are siblings and citizens of Cambodia. ECF No. 69, First Amended Complaint, ¶¶ 2-6, 8. Both Plaintiffs currently reside in Fresno County, California, and were residents of Fresno County at all times relevant to this action. *Id.* ¶ 2, 5. Plaintiffs entered the United States on or about March 26, 2006. *Id.* ¶¶ 18, 49. They obtained lawful permanent resident ("LPR") status in the United States on or about April 3, 2006, through their father, Neth Yith. *Id.* ¶¶ 4, 7-8. At the time Plaintiff Seanlim Yith obtained LPR status she was 14 years old. At the time that Plaintiff Seak Yith obtained LPR status he was 11 years old. *Id.* Neither Plaintiff has relinquished, abandoned or been divested of their LPR status, and they both have resided continuously in the United States since their entry in March 2006. *Id.*; *see also* ¶¶ 17, 69.

On or about February 4, 2011, Seanlim filed a Form N-400, Application for Naturalization, with USCIS. *Id.* ¶ 2. Seanlim's naturalization interview was initially scheduled for July 20, 2011, but was cancelled due to "unforeseen circumstances." *Id.* ¶¶ 19, 20. On or about December 21, 2012, Seak Leang filed a Form N-400, Application for Naturalization with USCIS. *Id.* ¶ 5. Seak Leang's interview was initially scheduled for June 20, 2013, but was also cancelled on account of "unforeseen circumstances." *Id.* ¶¶ 70-71.

On or about February 20, 2014, Plaintiffs first contacted USCIS through their attorney to inquire about the status of their applications. *Id.* ¶ 88. They received no response from USCIS until April 2014, and were only then told that the adjudication of their applications was "delayed." *Id*. On May 15, 2014, a USCIS officer emailed Plaintiffs that their cases were "pending," that there are a "small percentage of cases involving unresolved issues that may result in adjudication delays," and that "[USCIS] [is] unable to determine at this time when the review process will be completed." *Id.* ¶ 86. The email continued, "We understand that your clients may be frustrated . . . However, USCIS must balance individual inconvenience against broader issues of public safety and national security." *Id*. ¶ 93. Thereafter,

Plaintiffs periodically requested information regarding the status of their naturalization applications, but were "rebuffed" every time, and USCIS did not provide any time frame as to when their applications might be adjudicated. *Id.* ¶ 95.

On October 9, 2014, Plaintiffs again contacted USCIS through their attorney. *Id.* ¶ 96. They received a response on October 24, 2014, in which Defendant Crawford[2] advised Plaintiffs through a subordinate, "I do not have an update. Your clients' cases are both actively pending with USCIS. Please refer back to my May 15, 2014 e-mail as to possible reasons. For these very same reasons we are unable to determine when the review process for the naturalization applications will be completed." *Id.*

A.  **Initiation of this Lawsuit**

On November 25, 2014, Plaintiffs filed the original complaint in this case, over three years after Seanlim filed her naturalization application and nearly two years after Seak Leang filed his application. ECF No. 1. Plaintiffs cited 8 U.S.C. § 1447(b), which authorizes naturalization applicants to apply to the relevant district court for a hearing if "there is a failure to make a determination" on their naturalization petition within 120 days after a naturalization "examination" occurs. *Id.* at 2.

However, on February 24, 2015, USCIS issued interview notices in connection to Plaintiffs' naturalization applications, scheduling their interviews for March 10, 2015. ECF No. 23. In light of this development, on March 2, 2015, the parties stipulated to hold the matter in abeyance, and to file status reports by May 1, 2015. *Id.* Plaintiffs' interviews took place as scheduled. ECF No. 27 at 3. At their respective interviews, Plaintiffs, accompanied by counsel, confirmed that they had never met their U.S. citizen step-mother Sarin Meas, who had petitioned for them to enter the United States, and whose relationship to them forms the basis of their status in the United States. ECF No. 36-1 at 3, 7; ECF No. 39 at 1. Additionally, Plaintiffs were told, ostensibly for the first time, that in 2011, the DHS had obtained

---

[2] Crawford is no longer a named Defendant in the first amended complaint but was named in the original complaint in his capacity as the Director of the Fresno of Office of USCIS. ECF No. 1. The current director named in the amended complaint is Lynn Feldman. ECF No. 69.

3

an adverse statement from Ms. Meas. ECF No. 42 at 6. Plaintiffs and counsel were not shown the actual statement at the time of the interview. *Id.* The interviewing officer told Plaintiffs that they were otherwise eligible for naturalization "but for the fact that USCIS believed that the marriage leading to their qualifying relationship was a sham." *Id.*

On March 24, 2015, USCIS issued notices of intent to deny Plaintiffs' naturalization applications. ECF No. 36-1. According to these notices, USCIS intended to deny Plaintiffs' applications on the grounds that they are ineligible for naturalization under section 316 of the Immigration and Nationality Act ("INA"). ECF No. 36-1, at 3, 7. Specifically, the notices alleged that the marriage between Plaintiffs' father and Ms. Meas "was entered into for the sole purpose of granting [Plaintiffs' father] an immigration benefit," which under the law, is "invalid from its inception and cannot under any circumstances be the basis of a step-relationship under [INA § 101(b)(1)(B)]." *Id.* Furthermore, the notices quoted a sworn statement taken from Ms. Meas by a DHS official, dated September 6, 2011, which reads in its entirety as follows:

> I admit that I married Yith Neth in Fresno, CA for the soul [sic] purpose to get his permanent residency. I was young at the time and my parents pressured me into marrying him. I've never lived with him and I met him through my father [sic] previous boss at CB Market. The owner asked my father to ask me if I can marry him. We went to fresno [sic] and got a marriage license. He paid my parents $6000.00 at that time. The next time I saw him, I was told to drive to Santa Ana Immigration office. We were interviewed by a male officer and he told me that he knows and feels this marriage is a fraud. He explained the consequences and I decided not to go through with the process. That was the last time that I was with Yith Neth. So, he left to Fresno that same day. We did not have no kind of contacts [sic] whatsoever ever since. I don't remember signing any petitions to allow his childrens [sic] to come to the U.S. I remember signing some immigration forms, but I don't remember which paper. I admit that it was a fake marriage from day 1. And I regret it. I don't know any immigration offices [sic] or if Yith Neth knew any. I've never met Yith [sic] children and it was never the intentions [sic] for them to live with me.

*Id.* Plaintiffs responded to those notices on April 24, 2015, arguing that Ms. Meas's statement is insufficient to demonstrate their ineligibility for naturalization. ECF No. 27 at 2; ECF No. 39-1. To allow USCIS time to review Plaintiffs' responses and issue a decision, the parties stipulated to hold the lawsuit in abeyance for an additional sixty days, and file status reports on or by June 30, 2015. *Id.*

On June 30, 2015, Plaintiffs and Defendants filed separate status reports. ECF Nos. 27, 29.

Plaintiffs indicated that they intended to seek leave to amend or supplement their complaint. ECF No. 27 at 4. Defendants indicated that USCIS anticipated adjudicating Plaintiffs' applications before July 8, 2015, 120 days after Plaintiffs were interviewed, and the date that the district court's jurisdiction under 8 U.S.C. § 1447(b) could properly be invoked. ECF No. 29 at 2.

On July 24, 2015, the Court ordered Defendants to notify the Court as to whether Plaintiffs' naturalization applications had been adjudicated. ECF No. 30. On July 31, 2015, Defendants filed a notice of administrative action to inform the Court that USCIS had initiated removal proceedings against Plaintiffs. ECF No. 31.

**B.    This Court's Dismissal Order and the Ninth Circuit Appeal**

On September 9, 2015, Defendants filed a motion to dismiss, arguing, in part, that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the pendency of removal proceedings against Plaintiffs renders the Court unable to provide Plaintiffs with the relief they have requested. ECF No. 36. at 9-10. Defendants attached to their motion copies of the Forms I-862, Notices to Appear ("NTA"), dated July 7, 2015, issued to each respective Plaintiff, purporting to place both Plaintiffs in removal proceedings under section 240 of the INA. ECF No. 36-2.[3] Plaintiffs filed an opposition to Defendants' motion on September 23, 2015. ECF No. 41. Plaintiffs in opposition argued that the NTAs issued to them are not "warrants of arrest" within the meaning of 8 U.S.C. § 1429, and that therefore the NTAs do not preclude the adjudication of Plaintiffs' naturalization applications by the court even though they were in removal proceedings. *Id.* at 20-22.

The Court granted Defendants' motion to dismiss pursuant to 12(b)(6) for failure to state a claim "without prejudice to refiling if and when removal proceedings conclude in Plaintiffs' favor." ECF No.

---

[3] Moreover, Defendants filed a copy of the Notice of Hearing in Removal Proceedings, dated November 19, 2015, directing Plaintiffs to appear for a master calendar removal hearing at the San Francisco Immigration Court on June 8, 2016. ECF No. 45.

5

50 at 20. In dismissing the claim, the Court found that it was compelled to dismiss Plaintiffs' case because "Section 1429 precludes the Court from [adjudicating the Plaintiffs' naturalization application or from ordering USCIS to adjudicate the applications] while Plaintiffs are in removal proceedings." ECF No. 50 at 19.[4] Plaintiffs appealed the decision. ECF No. 58.

On appeal, the Ninth Circuit reversed, finding that 8 U.S.C. § 1429 "does not preclude a district court from considering a naturalization application that is properly before the court pursuant to § 1447(b)." *Yith v. Nielsen*, 881 F.3d 1155, 1161 (9th Cir. 2018). In making this finding, the Ninth Circuit interpreted the provision of § 1429 which provides "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." 8 U.S.C. § 1429; *Yith*, 881 F.3d at 1161. The Ninth Circuit found that this provision of § 1429 applies only to the Attorney General, not the district court, and therefore "the district court erred in concluding that the reference to the Attorney General in § 1429 prevented it from granting relief under § 1447(b)." *Id.* at 1165. The Ninth Circuit also interpreted the meaning of "pursuant to a warrant of arrest" and found that "the plain meaning of the term 'warrant of arrest' is an order authorizing law enforcement to seize and detain a person as necessary for the administration of law." *Id.* at 1166. Accordingly, the Ninth Circuit found that the notices to appear that the Yiths received were not equivalent to "a warrant of arrest" as referenced in § 1429 and that "this portion of § 1429 was inapplicable to their case" for this second reason. *Id.* at 1168 (concluding that "[b]ecause the district court is not the executive branch and there was no pending removal proceeding pursuant to a warrant of arrest, § 1429 was not applicable.").

While the appeal was pending, removal proceedings continued. ECF Nos. 78-1 & 78-2 at ¶ 11. On July 20, 2017, a Master Calendar Hearing occurred for both Plaintiffs. *Id.* at ¶ 12. The Immigration

---

[4] Additionally, the Court in this dismissal Order denied Plaintiffs' motion to amend the Complaint. ECF No. 50 at 22-23. Plaintiffs filed a motion for reconsideration of the dismissal and denial of the motion to amend which was also denied by this Court. ECF No. 57.

6

1  Judge administratively closed both cases on April 12, 2018. *Id.*

2  Following the appeal and remand, the Plaintiffs filed a first amended complaint on June 8, 2018. ECF No. 69. By motion filed on July 31, 2018, Defendants moved to remand the case to USCIS for "prompt adjudication" of the naturalization applications by USCIS within 30 days. ECF No. 78 at 3, 5. Plaintiffs additionally filed a motion for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 11 claiming that the filing of the motion to remand was vexatious and frivolous since USCIS does not have authority to review the applications while removal proceedings are still pending. ECF No. 80.

## II. DISCUSSION

### A. DEFENDANTS' MOTION TO REMAND TO USCIS

8 U.S.C. § 1447(b) provides that if USCIS fails to make a determination on a naturalization application within 120 days of the examination interview, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and *may either determine the matter or remand the matter*, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. §1447(b) (emphasis added).[5] Once the applicant invokes the district court's jurisdiction under § 1447(b), the district court then has "exclusive jurisdiction" to either determine the matter, *i.e.* grant or deny Plaintiffs' naturalization applications, or remand to matter to USCIS. *See United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004) ("Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority.").[6] "A central purpose of the statute was to reduce the waiting time for naturalization

---

[5] The initial interview date triggers the 120-day period under 8 U.S.C. § 1447(b). *See United States v. Hovsepian,* 359 F.3d 1144, 1160 (9th Cir. 2004). In this case, more than 120 days has passed since Plaintiffs' interviews occurred on March 10, 2015.

[6] In 2002, Congress transferred the function of INS, or the Immigration and Naturalization Service, to the Department of Homeland Security ("DHS") and transferred the function of adjudicating naturalization petitions to USCIS, a component of DHS. *Yith*, 881 F.3d. at 1158.

applicants." *Id.* at 1163.

Defendants now request that the Court, in its discretion, remand the matter to USCIS for "prompt adjudication." ECF No. 78 at 3. Defendants contend that since the removal proceedings have been administratively closed and the Ninth Circuit has remanded the case to the district court, there "is no further barrier to the agency's adjudication of each of Plaintiff's [sic] naturalization application[s]." *Id.* at 3. Defendants request the Court exercise its discretion and remand with instruction to adjudicate within 30 days. *Id.* at 5. In support of their motion, Defendants argue that the executive branch is uniquely situated to determine the Plaintiffs' eligibility for naturalization and as a result the vast majority of district courts remand these matters to USCIS to decide in the first instance whether to grant or deny citizenship. *Id.* at 4. Defendants point out that even if Plaintiffs' applications are denied, Plaintiffs can return to the district court for a review of that denial after exhausting their administrative appeal pursuant to 8 U.S.C. § 1421(c).[7]

Defendants cite to two Eastern District of California cases for the proposition that "[t]he vast majority of district courts remand lawsuits filed under § 1447(b) for USCIS to decide in the first instance whether to grant or deny an application for naturalization." *Gill v. Crawford*, No. 1:15-CV-1633-MCE-MJS, 2016 WL 880952, at *1 (E.D. Cal. Mar. 8, 2016); *Rashid v. Dep't of Homeland Sec.*, No. 2:14-CV-2109-JAM-KJN, 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017) ("the majority of district courts have remanded the case to USCIS for adjudication."); ECF No. 78 at 4. The reasoning for remand to the agency for an initial determination focuses on the fact that "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway

---

[7] 8 U.S.C. § 1421(c) provides:
> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8

that the law provides." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002) (per curiam) (finding remand to the Board of Immigration Appeals ("BIA") appropriate on application for asylum and withholding of deportation for BIA's consideration of "changed country conditions" which was not initially considered or decided by the BIA).

Plaintiffs oppose the motion to remand by making two principal arguments. First, Plaintiffs argue that remand to USCIS is not possible either because either there is an absence of jurisdiction in DHS or a lack of authority of DHS to determine Plaintiffs' applications due to the pending removal proceedings. ECF No. 79 at 6-9. Second, Plaintiffs argue that even if remand is possible, it should not be ordered because of several independent reasons, namely the considerable equities of this case. *Id* at 10-17.

### 1. **USCIS's Authority to Decide the Matter on Remand**

Plaintiffs argue that none of Defendants' cited authority deals with remand of a naturalization application to USCIS where removal proceedings are still pending. ECF NO. 79 at 8-9.[8] Plaintiffs contend that because removal proceedings are still pending, USCIS does not currently have jurisdiction to determine Plaintiffs' naturalization application if the matter is remanded. ECF No. 79 at 7. Plaintiffs contend that once the Department of Justice ("DOJ") issues a NTA, jurisdiction vests in the Executive Office of Immigration Review of the DOJ. *Id.* (citing 8 C.F.R § 1003.14 and 8 C.F.R. § 1239.2). Therefore, Plaintiffs argue that is it not possible for USCIS to adjudicate Plaintiffs' naturalization applications within 30 days, as Defendants submit, while removal proceedings are still pending. *Id.* at 8.

In response, Defendants submit that Plaintiffs confuse the issue by citing regulations defining the immigration court's jurisdiction over removal proceedings but that have no bearing on USCIS's jurisdiction regarding the separate and distinct authority over naturalization applications. ECF No. 81 at

---

[8] Plaintiffs submit that they "remain in removal proceedings." ECF No. 79 at 5. Plaintiffs contend that the Immigration Judge agreed to administratively close the removal proceedings on April 12, 2018 in order to allow the Court to make a judicial determination on the naturalization applications. *Id.* at 13. Plaintiffs appear to argue that the administrative closure of the removal proceedings does not have the same impact as termination of removal proceedings and that therefore the removal proceedings are still "pending" despite the administrative closure. *Id.*

9

4. Defendants point out that the regulations cited to by Plaintiffs in their opposition, namely 8 C.F.R. 1003.14 and 8 C.F.R. § 1239.2, fall within Chapter V of Title 8 of the Code of Federal Regulations ("CFR") which is titled "Executive Office for Immigration Review, Department of Justice." ECF No. 81 at 5, n.4. Correspondingly, these regulations are not applicable to naturalization proceedings that are before the USCIS under separate statutory grant and the regulations applicable for naturalization statutes appear in Chapter I of Title 8 of the CFR which is titled "Department of Homeland Security" since USCIS is an agency that is part of the DHS, not the DOJ. *Id.* at 6.

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). The "Attorney General" in this statute has been defined to mean USCIS. *Yith*, 881 F.3d at 1158 ("courts interpret this reference [to the Attorney General in §1421(a)], as well as references to the Attorney General in 8 U.S.C. §§ 1421, 1429, 1445, and 1447, as referring to the authority of the USCIS"). In arguing that the removal proceedings prevent USCIS's adjudication once the NTA is issued, Plaintiffs cite § 1003.14 which provides that jurisdiction vests before an Immigration Judge when a charging document is filed with the Immigration Court. 8 C.F.R. § 1003.14(a).[9] However, Plaintiffs do not provide a feasible argument for why the vesting of jurisdiction with the Immigration Judge in removal proceedings changes the "sole authority" granted to USCIS to determine naturalization applications under 8 U.S.C. § 1421(a).

Nor does the court agree with Plaintiffs that 8 C.F.R. § 1239.2(f) underscores the "jurisdictional limits regarding naturalization applications." ECF No. 79 at 7. The regulation, which like § 1003.14 is also applicable to Immigration Judges, provides for when an Immigration Judge may terminate removal proceedings to permit an alien to proceed to a final hearing on a pending naturalization application.[10]

---

[9] As Defendants point out the scope of the rules under Chapter V of the CFR apply to *matters before Immigration Judges* "including, but not limited to, deportation, exclusion, removal, bond, rescission, departure control, asylum proceedings, and disciplinary proceedings" and the rules were "promulgated to assist in the expeditious, fair, and proper resolution of matters coming before Immigration Judges." 8 C.F.R. § 1003.12.

[10] 8 C.F.R. § 1239.2(f) provides:

10

Whatever may be said about the interpretation of the regulation's language in implying that a naturalization application cannot proceed when removal proceedings are not "terminated," the regulation does not override the statutory authority granted to USCIS in 8 U.S.C. § 1421. More importantly, the Ninth Circuit's decision in this matter plainly held that the pending removal proceedings in this matter, even before the administrative closure, did not prevent USCIS from making a determination on Plaintiffs' naturalization applications under 8 U.S.C. § 1429 since the removal proceedings against Plaintiffs are not pursuant to a "warrant of arrest." *Yith*, 881 F.3d at 1168. ("Although the Yiths received a notice to appear, they were not subject to "a warrant of arrest issued under the provisions" of Chapter 12 of the INA. Accordingly, their removal proceedings were not pursuant to such a warrant of arrest, and this portion of § 1429 was inapplicable to their case."). Besides 8 U.S.C § 1447(b), which vests the district court with exclusive jurisdiction over the pending naturalization application, Plaintiffs have not identified any other statutory authority which divests USCIS of the "sole authority" to naturalize persons as citizens pursuant to 8 U.S.C §1421(a).

The Plaintiffs have not cited any persuasive authority to support their argument that the regulations applicable to Immigration Judges, namely 8 C.F.R. §1003.14(a) and 8 C.F.R. § 1239.2, somehow strip USCIS of authority to decide the naturalization applications, particularly in light of the Ninth Circuit's decision. Accordingly, the Court is not convinced by Plaintiffs argument that USCIS does not have authority or jurisdiction on remand to make determinations on Plaintiffs' naturalization applications due to the "pending" removal proceedings.

**2.    Remand Is Inappropriate Due to Delay**

Plaintiffs second argument is that even if remand is possible, there are several independent

---

An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

11

reasons why this Court should not in the exercise of its discretion order remand to USCIS on the facts of this case. ECF No. 79 at 10-17. Plaintiffs submit four independent reasons why the case should not be remanded to USCIS, the most convincing of which is the substantial delay that has already occurred as well as the additional potential delay that may result if the matter is remanded. Plaintiffs argue that they would be further frustrated and delayed by remand after an already lengthy delay by USCIS. Plaintiffs' naturalization applications have been pending since 2011 and 2012. Plaintiffs had their naturalization examinations on March 10, 2015. Plaintiffs point out that Defendants previously indicated to this Court in a filing that USCIS would make a determination on the naturalization applications within the 120 days following the examination interviews but instead issued Plaintiffs NTAs in removal proceedings on the 120-day deadline. ECF No. 79 at 11.[11] As a result of the NTAs, the Defendants filed a motion to dismiss which this Court granted, interpreting the then-existing case law on 8 U.S.C. § 1429 to prevent it from making a determination on the applications when removal proceedings were pending. ECF No. 50. USCIS's decision to institute removal proceedings rather than make determinations on the naturalization applications, led to more than three years of additional delays and significant expense to Plaintiffs as a result of the Ninth Circuit appeal. ECF No. 79 at 11.[12] After Plaintiffs successfully appealed the dismissal

---

[11] In Defendants' status report filed with the Court on June 30, 2015, Defendants represented that "Petitioners have been interviewed by U.S. Citizenship and Immigration Services on their N-400 naturalization applications. USCIS has indicated to undersigned counsel that those interviews occurred on March 10, 2015, and **that USCIS anticipates adjudication of Plaintiffs' applications completed before July 8, 2015** – the date that jurisdiction under 8 U.S.C. § 1447(b) could properly be invoked." ECF No. 29 at 2 (emphasis added).

[12] Defendants' decision to initiate removal proceedings suggest a tactical maneuver in order to avoid making a determination within the 120-day window provided for by 8 U.S.C § 1447(b). The Court already made such observation in the Court's Order on the motion to dismiss:

> The Court is sympathetic to the long delays in the naturalization process—delays that are unfortunately, not uncommon. *See, e.g. Aljabri v. Holder*, 745 F.3d 816, 817 (7th Cir. 2014) (nine years); *Wu v. Rodriguez*, [142] F. Supp. 3d [594], 2015 WL 5000254, at *2 (S.D. Ohio 2015) (seventeen months); *Hassine*, 53 F. Supp. 3d. at 1299-1300 (three years); *Lucaj*, 749 F. Supp. 2d at 603-04 (fourteen years); *Al-Mohammed v. U.S. Citizenship and Immigration Servs.*, 2007 WL 2004866, at *4 (E.D. Mich. 2007) (four years). While mindful that Defendants have valid concerns about national security and administering this country's process for the admission of individuals seeking to naturalize in an orderly and legal manner, the Court is nevertheless troubled and disappointed by the Government's actions and inactions in failing to be timely and forthright with Plaintiffs as to the Government's suspicions about the relationship between Plaintiffs' father and Ms. Meas. It is undisputed in the pleadings and briefs before this Court that the Government began to question the lawfulness and status of each Plaintiff as early as 2011, yet did not inform Plaintiffs of their suspicions until March 10, 2015, and only after this lawsuit had commenced.

decision, the case is now, more than three years later, before this Court again. Plaintiffs argue that if the matter is remanded there would be further delay of "unknown magnitude." ECF No. 79 at 8, 12-13.

More than three years have passed since the date of Plaintiffs' interviews. Courts that have declined to remand to USCIS consider the length of delay since 8 U.S.C § 1447(b) was enacted with the aim of avoiding long delays. *See Rashid*, 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017) ("In the few cases where a district court opted to adjudicate the matter itself, the application had been pending for a lengthy period and the defendants failed to assure the court that a swift decision could be made on remand."); *Hovsepian*, 359 F.3d at 1163 ("A central purpose of the statute was to reduce the waiting time for naturalization applicants.").[13] District courts have declined to remand to the agency when faced with delays of similar magnitude. *Astafieva v. Gonzales*, No. C06-04820, 2007 WL 1031333, at *2 (N.D. Cal. Apr. 3, 2007) (declining to remand and granting naturalization application that was pending thirty-five months since naturalization interview and where Defendants provided no indications when action would be taken on her application); A*l-Kudsi v. Gonzales*, No. CV 05-1584, 2006 WL 752556, at *3 (D. Or. Mar. 22, 2006) (finding the delay of nearly four years where there is no explanation or justification for the delay by USCIS or the F.B.I is unreasonable and granting naturalization application); *Alkenani v. Barrows*, 356 F.Supp.2d 652, 657, n. 6 (N.D. Tex. 2005) (suggesting that a delay of two years in processing an application for naturalization may be unreasonable).

---

> The Government has provided no explanation for the protracted inaction and refusal to explain from when they discovered a perceived discrepancy in Plaintiffs' immigration statuses. The Government's evasive responses to Plaintiffs' inquiries, and their failure to disclose this information to Plaintiffs for four years is insensitive at best. Doc. 42. The federal government of the United States should not only be held to a high standard to carry out its duties with integrity, but should hold itself to such a high standard. The facts and reasons that were available to the Government have not changed since the initial inquiry by Plaintiffs. Nothing about those facts or reasons explains either the secrecy or the delay, and that delay caused unnecessary emotional trauma to Plaintiffs, as well as wasted legal fees and costs to file the instant case. The Government can and should do better than it did in this factual scenario.
> ECF No. 50 at 22-23.

[13] The Ninth Circuit in *Hovsepian* discussed generally that Congress' intent in enacting the Immigration Act of 1990, including 8 U.S.C. §1447(b), was to: (1) reduce the waiting time for naturalization applicants; (2) streamline the process of applying for naturalization and reduce the burden on courts and the INS; (3) promote consistency and fairness of naturalization decisions; and (4) afford naturalization applicants the power to choose the forum that will adjudicate their applications. *Id.* at 1163-64.

Additionally, USCIS already issued a notice of intent to deny the naturalization applications in 2015 but declined to issue a determination within the 120-day window when it had the opportunity to do so (even after representing it would). The Court has every indication that USCIS will deny the naturalization applications based on the notices of intent to deny. Thus, remanding to USCIS in this matter for a determination would only serve to further delay the district court's review of this matter and add an additional layer of administrative review through the administrative appeal process in a case where Plaintiffs have already been subjected to a lengthy delay and an appeal to the Ninth Circuit. "Congress gave the last word to the district courts for delayed or denied applications." *Hovsepian*, 359 F.3d at 1164. Defendants' suggestion that Plaintiffs are equivalently able to receive judicial review of the agency decision under 8 U.S.C. § 1421(c) would result in the unnecessary waste of judicial resources if the matter is remanded only to land back before the district court after an additional layer of administrative appeals. *See* ECF No. 78 at 5; ECF No. 79 at 15-16. Therefore, it makes little sense to remand to the agency for the likely issuance of a denial as this would only further delay the district court's review after administrative appeal of the denial pursuant to § 1421(c). Defendants also fail to specify how a recommendation would provide any additional information. "Awaiting a recommendation by USCIS would simply be a formality and the Court finds that such an administrative hurdle in the instant case is unnecessary. Any further [agency] review would only delay the. . . resolution of this case." *Khan v. Chertoff*, No. C08-1448 RSM, 2009 WL 54236, at *3 (W.D. Wash. Jan. 6, 2009). The Court here declines to create a formality by remanding and declines to create another administrative hurdle for Plaintiffs who have already been the subject to long delays without any real explanation for why they have been subject to such delays.

Plaintiffs have submitted, and Defendants do not appear to dispute, that they have met all the requirements for naturalization save for a single issue that is in dispute. The single issue for resolution hinges on the 2011 statement of Plaintiffs' stepmother. The agency's notice of intent to deny cites the statement as the reason why Plaintiffs cannot show that they have been lawfully admitted for permanent

residence. ECF No. 36-1. USCIS thus stated that Plaintiffs could not meet their burden of proving their lawful permanent resident status under 8 U.S.C. § 1429. *Id.* Plaintiffs further contend that there has been no determination in the removal proceedings affecting Plaintiffs' legal permanent resident status or whether they can be removed. ECF No. 79 at 5-6. Hence, this does not appear to be "the type of case where the Court or the parties do not have all the information needed to adjudicate an application." *Khan*, 2009 WL 54236, at *3. This is not a case where the Court must await the results of an F.B.I. criminal background check or name check which constitute a large number of cases that get remanded. *See* Kurtis A. Kemper, Construction and Application of 8 U.S.C.A. § 1447(b), 45 A.L.R. Fed. 2d 621 at §16 (originally published in 2010) (collecting cases where remand was granted). The facts of this case are not typical or similar to those cases that are routinely remanded to the agency for determination.

The amount of time Plaintiffs' naturalization applications have been pending without a determination is the major focus of the Court's decision on whether to remand. An order remanding just adds another layer of review, this time administrative review, and will result in further delay before achieving a final determination on Plaintiffs' naturalization applications. Because the Court has determined not to remand based on the issue of delay, the Court declines to reach the remaining arguments in Plaintiffs' opposition.

Defendants' motion to remand to USCIS for a determination on the naturalization application is DENIED.

**B.     PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs filed a motion for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 11 claiming that the filing of the motion to remand was vexatious and frivolous since USCIS does not have authority to review the applications while removal proceedings are still pending. ECF No. 80-1 at 8. Plaintiffs seek $6,225 in attorney's fees for preparing and filing the motion for sanctions and for fees in responding to the motion to remand. ECF No. 80 at 6.

Federal Rule of Civil Procedure 11 "imposes on any party who signs a pleading, motion, or other

paper. . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991); *see also Christian v. Mattel*, Inc., 286 F.3d 1118, 1126 (9th Cir. 2002) ("One of the fundamental purposes of Rule 11 is to 'reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, … [thereby] avoid[ing] delay and unnecessary expense in litigation."). In determining whether Rule 11 sanctions are appropriate, the Court's inquiry "is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper[s] w[ere] well-founded." *Schutts v. Bentley Nev. Corp.*, 966 F. Supp. 1549, 1562 (D. Nev. 1997) (citing *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996)); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) (en banc) (a "frivolous" filing is one that "is both baseless and made without a reasonable and competent inquiry.") "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Tr. v. A-C Co.,* 859 F.2d 1336, 1345 (9th Cir. 1988).

Plaintiffs' core argument in support of their request for the imposition of sanctions is based on their contention that the motion to remand has no basis in law because USCIS does not have authority to review the applications while removal proceedings are "pending." ECF No. 80-1 at 9-10. The Court has already found this argument to be without support The Plaintiffs have not submitted any authority for why the regulations cited by Plaintiffs that apply to Immigration Judges, namely 8 C.F.R §1003.14 and 8 C.F.R. §1239.2, would revoke USCIS's authority or jurisdiction to make determinations on the naturalization application, particularly in light of the Ninth Circuit's decision on this matter. *See supra* section II.A.1. Correspondingly, the Court rejects Plaintiffs' characterizations of the law that there is no basis in law for what Defendants' remand request. 8 U.S.C § 1447(b) plainly provides the authority for the Court to remand to the agency with appropriate instructions. While the Court here denies the motion to remand, § 1447(b) clearly provides a basis for the Defendants' motion. Therefore, Defendants' motion for remand was not frivolous or baseless and Plaintiffs' have not met the high bar to show sanctions are

warranted.[14]

The Court understands Plaintiffs' frustrations with the delays they have experienced in this case. However, the Plaintiffs' motion for sanction does not meet the requirements under Rule 11 for imposing sanctions. Plaintiffs' motion for sanctions is DENIED.[15]

### III. CONCLUSION AND ORDER

For all the foregoing reasons, the Defendants' motion to remand (ECF No. 78) is **DENIED**. Additionally, Plaintiffs' motion for sanctions (ECF No. 80) is **DENIED**. Plaintiffs Seanlim and Seak Yith have been lawful permanent residents of this country since 2006. They have been waiting for the USCIS to make decisions on their naturalization applications for over several years and USCIS has failed to do so in a timely manner.

The Court refers the matter to the Magistrate Judge for efficient and immediate scheduling in light of the unreasonable amount of time that has already passed.

IT IS SO ORDERED.

    Dated: __**October 26, 2018**__             __/s/ Lawrence J. O'Neill__
                                                       UNITED STATES CHIEF DISTRICT JUDGE

---

[14] Defendants' opposition also argue that Plaintiffs have not met the safe harbor provisions of Rule 11(c)(2) which requires that the motion be served on Defendant at least 21 days to provide the opposing party an opportunity to withdraw or correct the challenged filing. ECF No. 82 at 4-6 (citing Fed. R. Civ. P. 11(c)(2)). The Court need not reach the argument since it finds there was a basis in law for the motion.

[15] The Court notes that in connection with Plaintiffs' motion for sanctions, counsel submitted over 61 pages in the form of a notice of motion (six pages), memorandum in support (19 pages), declaration of counsel (23 pages), and reply (13 pages). This is not the first time the Court has reprimanded counsel for circumventing the Court's rule on page limitations by filing lengthy declarations of counsel wherein he adds additional factual information and elaborates on legal arguments. ECF No. 57 at 4, n. 3 (citing *Ransmeier v. Mariani*, 718 F.3d 64, 69 (2d Cir. 2013)). Much of the supplemental filings are repetitive and have caused unnecessary expenditure of judicial resources. If Counsel continues such practices, the court will not hesitate to sanction such conduct as this serves as Mr. Leitchy's second warning.