# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SEANLIM YITH and SEAK LEANG YITH,

    Plaintiffs,

    v.

KIRSTJEN NIELSEN, ET AL.,

    Defendants.

_____/

Case No. 1:14-cv-01875-LJO-SKO

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR A PROTECTIVE ORDER

(Docs. 106, 107)

## ORDER

On June 13, 2019, pursuant to the Court's June 11, 2019 Order, (Doc. 105), Defendants filed a motion for a protective order and a proposed protective order. (Docs. 106, 107.) Plaintiffs filed an opposition on June 18, 2019, and Defendants filed a reply on June 19, 2019. (Docs. 108, 109.) For the reasons stated below, the Court GRANTS in part and DENIES in part the motion.

### I.    BACKGROUND

**A.    Procedural Background**

Plaintiffs filed this case on November 25, 2014, alleging Defendants violated 8 U.S.C. §§ 1446(b) and 1447(b) by failing to timely adjudicate Plaintiffs' naturalization applications. (Doc. 1.) On March 10, 2015, the United States Citizenship and Immigration Services (USCIS) conducted required interviews of Plaintiffs and anticipated adjudicating the applications before July 8, 2015.

(*See* Doc. 29 at 2.)  However, instead of adjudicating the applications, USCIS issued Plaintiffs notices to appear and initiated removal proceedings against them.  (Doc. 31 at 2.)

On January 8, 2016, the assigned district judge granted summary judgment in favor of Defendants, holding that 8 U.S.C. § 1429 precluded the district court from adjudicating Plaintiffs' naturalization applications (or ordering USCIS to adjudicate the applications) while removal proceedings were pending.  (*See* Doc. 50 at 19.)  The Ninth Circuit reversed and remanded on February 7, 2018, ruling that 8 U.S.C. § 1429 precluded only the executive branch, and not the district court, from considering a naturalization application, and only when there is a pending removal proceeding pursuant to a warrant of arrest.  (Doc. 61 at 25.)

Plaintiffs filed a first amended complaint on June 8, 2018.  (Doc. 69.)  On July 31, 2018, Defendants filed a motion to remand the case to USCIS, which the assigned district judge denied on October 26, 2018.  (Docs. 78, 88.)  On December 13, 2018, the Court entered a Scheduling Order setting the non-expert discovery deadline for May 31, 2019, the dispositive motions deadline for July 31, 2019, and trial for January 7, 2020.  (Doc. 93.)

**B.      Discovery Requests**

On March 7, 2019, Plaintiffs served requests for production to Defendants.  It is unclear when Defendants began producing documents.  As of May 13, 2019, Defendants represented they had produced thousands of documents responsive to Plaintiffs' requests, while Plaintiffs contended the discovery responses were incomplete.

On May 6, 2019, the parties requested that the court extend the scheduling order deadlines, including the non-expert discovery deadline, to July 15, 2019.  (Doc. 95.)  The parties stated that there were "outstanding discovery disputes that the parties are actively attempting to resolve without the need for the Court's intervention."  (*Id.* at 2.)  On May 8, 2019, the Court granted the extensions but advised the parties that it was "the only stipulation to modify the Scheduling Order that the Court will entertain."  (Doc. 96 at 4.)

**C.      Discovery Disputes**

On May 24, 2019, the parties appeared telephonically for an informal discovery dispute conference.  Attorney Bruce Leichty appeared on behalf of Plaintiffs, and attorney Anthony Bianco

appeared on behalf of Defendants.  At the informal discovery dispute conference, Plaintiffs requested that: (1) Defendants produce a written response and documents responsive to Plaintiffs' requests for production; (2) Defendants produce un-redacted copies of previously produced, redacted documents; and (3) Defendants produce exhibits attached to a previously produced report. On May 28, 2019, following the informal discovery dispute conference, the Court issued an Order addressing Plaintiff's requests.  (Doc. 101.)

As to the first request, Defendants conceded that they failed to produce a written response by the deadline, but asserted they had produced all responsive documents.  Thus, the Court directed Defendants to produce the written response by May 31, 2019, and directed the parties to meet and confer to determine whether any documents were missing from the production by June 7, 2019. (Doc. 101 at 2.)  Regarding the third request, Defendants conceded that they failed to produce the exhibits attached to the previously produced report and failed to formally object to the production of the exhibits by the deadline.  Thus, the Court directed Defendants to produce the exhibits by May 31, 2019.  (*Id.* at 4.)

As to the second request, Defendants asserted that they properly redacted certain documents to remove information protected under the Privacy Act of 1974 and the law enforcement privilege. Defendants also stated they had proposed a protective order at the start of discovery,[1] but the parties were unable to reach an agreement.  As the parties now had tangible discovery materials to examine and the case has proceeded for months since the parties had last discussed a protective order, the Court directed the parties to meet and confer regarding a mutually agreeable protective order by May 31, 2019. (Doc. 101 at 3.)  The Court further directed Defendants that if they intended to redact documents in the absence of a protective order, they must set forth the basis for each redaction and serve a privilege log on Plaintiffs by June 7, 2019.  (*Id.* at 3-4.)

On June 6, 2019, Defendants filed an "Update to the Court Regarding Informal Discovery Dispute Conference," stating that Defendants had served on Plaintiffs the written response, the

---

[1] Defendants represent in their motion that they first proposed a stipulated protective order to Plaintiffs when the parties met and conferred in November 2018 to prepare and file an Updated Joint Scheduling Report.  (Doc. 106 at 2; *see also* Doc. 90 at 13-14.)

exhibits, and remaining responsive documents on May 31, 2019.[2]  (Doc. 104 at 1-2.)  As to the protective order and redactions, Defendants stated, "[t]he parties have met and conferred regarding a mutually agreeable protective order but have been unable to reach an agreement."  (*Id.* at 2.)

On June 10, 2019, the Court received two binders of documents from Defendants with a privilege log and letter explaining the submission.  The letter stated Defendants simultaneously sent the binders and privilege log to Plaintiffs' counsel on June 7, 2019.  The documents submitted to both the Court and Plaintiffs' counsel were redacted copies of the documents that Plaintiffs had demanded in discovery.[3]

Upon receiving the documents and considering the upcoming non-expert discovery deadline of July 15, 2019, the Court promptly set a telephonic status conference to address the current posture of the discovery dispute and the parties' inability to arrive at a mutually agreeable protective order to facilitate the production of unredacted documents.  On June 11, 2019, the parties appeared for a telephonic status conference.

The Court noted that the parties had not yet agreed upon the terms of a protective order.  It appeared that the sole remaining issue was whether the protective order should include a provision limiting the use of the discovery material to this litigation.  This limitation on the use of discovery was also the remaining issue regarding the protective order at the discovery dispute conference on May 24, 2019.  It therefore appeared that the parties had not adequately met and conferred "regarding a mutually agreeable protective order," as required by the Court's previous order.[4]  (*See* Doc. 101 at 3; *see also* Doc. 105 at 4.)

In view of the impending non-expert discovery deadline, because the parties were unable to agree on terms of a stipulated protective order or otherwise agree on a resolution to the issue

---

[2] Defendants previously filed a notice to the Court on May 31, 2019, but re-filed a corrected notice on June 6, 2019. (Docs. 102, 104.)  The Clerk of the Court entered a notation on the docket to disregard the first notice, as the document was incomplete.  (Doc. 103.)

[3] The Court's May 28, 2019 Order advised Defendants' counsel that if the parties were unable to agree on a protective order, Defendants would be required to submit the *un-redacted* documents for *in camera* review with a privilege log. (Doc. 101 at 3 n.3.)  This was meant to encourage the parties to meaningfully meet and confer, but in any event Defendants' submission of redacted documents, as opposed to un-redacted copies, is unhelpful to determining the propriety of the redactions.

[4] Defendants assert in their motion, however, that while the parties have been unable to agree on a stipulated protective order, "it has not been for a lack of a genuine effort on the parties to meet and confer to discuss their positions and arguments and offer proposals to overcome their differences."  (Doc. 106 at 2 n.2.)

regarding redaction of documents and were unable to resolve their dispute through the informal discovery dispute process, the Court directed the parties to brief the remaining issues. Thus, on June 12, 2019, the Court entered an Order directing Defendants to file a motion for a protective order and setting an expedited briefing schedule on the motion, in order for the Court to resolve the parties' dispute sufficiently prior to the discovery deadline.

On June 13, 2019, Defendants filed their motion for a protective order (Doc. 106) and a proposed protective order (Doc. 107). Defendants' motion and protective order are now before the Court.

## II.      DISCUSSION

**A.      Defendants' Motion for a Protective Order is Procedurally Appropriate**

**1.      Defendants' Motion is Timely**

Plaintiffs contend in their opposition that Defendants' motion for a protective order is untimely and should be denied on that basis. (Doc. 108 at 11.) Plaintiffs concede that there is no time limitation in Rule 26(c) but contend there is an "implicit requirement" that a motion must be brought before discovery responses are due. (*Id.*) Plaintiffs further contend that Defendants waived privilege by failing to timely serve a written response to the requests for production. (*Id.* at 12-13.)

Defendants respond that an untimely motion for a protective order may be granted for good cause, and that they have shown good cause because there is "no evidence Defendants sought to prolong the discovery dispute." (Doc. 110 at 3.) Defendants contend that they have attempted to negotiate a stipulated protective order with Plaintiffs since November 2018 and informed Plaintiffs' counsel that, absent a protective order, Defendants would need to assert privileges and make redactions in produced documents. (*Id.*) Defendants also assert that they have "receded from some of their privilege assertions … in an attempt to resolve this discovery dispute." (*Id.* at 4.) Thus, Defendants contend, this is not a "case where Defendants have sat back and prolonged the dispute." (*Id.*)

Under Rule 26, "and in the inherent discretion of a court to manage its own discovery, a court may sua sponte enter a protective order for good cause shown." *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM P, C01-1351, 2007 WL 4276554, at *17-18 (E.D. Cal. Nov. 29,

2007); *see also Prescott v. County of Stanislaus*, No. 1:10-cv-00591 JLT, 2011 WL 5877013, at *5 (E.D. Cal. Nov. 22, 2011). There is no explicit time requirement in Rule 26 for the filing of a motion for a protective order. *See* Fed. R. Civ. P. 26(c). Courts in other districts have found that a motion for a protective order is untimely if filed after discovery responses are due, unless the court excuses the untimeliness for good cause shown. *Henry v. Ocwen Loan Servicing, LLC*, No. 3:17-cv-688-JM-NLS, 2018 WL 1638255, at *3 (S.D. Cal. Apr. 5, 2018); *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991).

In *Henry*, the district court found that the defendants' motion was properly filed even though it was filed beyond the 30-day limit for responses to discovery requests. 2018 WL 1638255, at *3. The court found that the defendants established good cause for the untimely filing where the defendants attempted to negotiate a stipulated protective order with the plaintiffs upon service of the plaintiffs' requests for production; the defendants continued to request a stipulation many times throughout the case; and because protective orders were generally routine for financial information and routinely stipulated to by the parties. *Id.* In excusing the untimeliness of defendants' motion for protective order, the court emphasized that defendants had "no reason to think that a protective order would be objectionable and began the negotiations for one" when they made their first production and informed the plaintiffs that certain documents would only be produced under a protective order. *Id.*; *see also Brittain*, 136 F.R.D. at 413 (finding good cause to excuse the defendant's otherwise untimely motion for protective order where the defendant previously sought in good faith to negotiate a consent protective order).

The Court finds *Henry* persuasive. Here, Defendants failed to serve a written response to Plaintiffs' requests for production, or a privilege log, by the April 8, 2019 deadline, and failed to file their motion for protective order by that date. (*See* Doc. 101 at 2.) However, the Court finds good cause to excuse the untimeliness because similar to the defendants in *Henry*, Defendants (1) informed Plaintiffs as early as November 2018 that they would need to redact information based on asserted privileges in the absence of a protective order; (2) attempted to negotiate a stipulated protective order with Plaintiffs since November 2018, long before Plaintiffs served their requests for production on March 7, 2019; and (3) had no reason to think that a protective order would be

objectionable or that Plaintiffs would refuse to stipulate to a protective order.  (*See* Doc. 110 at 3-4.)

## 2.      Defendants Have Not Waived Privilege

To the extent Plaintiffs contend Defendants have waived privilege by filing the motion for protective order after the deadline to respond to discovery requests, the Court disagrees.[5] Defendants served a privilege log on June 7, 2019.  (*See* Doc. 105 at 4; Doc. 106-1.)  The Ninth Circuit has rejected "a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit."  *Burlington Northern & Santa Fe. Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *see also Sec. of Labor, U.S. Dep't of Labor v. Kazu Constr., LLC*, No. 16-00077 ACK-KSC, 2017 WL 628455, at *3 (D. Haw. Feb. 15, 2017) (quoting *Liguori v. Hansen*, No. 2:11-cv-00492-GMN, 2012 WL 760747, at *11 (D. Nev. Mar. 6, 2012)) ("courts 'retain discretion to relieve a late or non-responding party from the potentially harsh consequences associated with waiver'").  Instead, courts are to "make a case-by-case determination," considering factors including the timeliness of the objection and accompanying information about the withheld information; the magnitude of the document production; and other circumstances of the litigation that make responding to discovery unusually easy or unusually difficult.  *Burlington Northern*, 408 F.3d at 1149.  These factors are to be applied "in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources[.]"  *Id.*

Here, while it is uncontroverted that Defendants failed to produce a privilege log timely, the magnitude of the production is great, with about 1,300 documents produced.  The document and privilege log production in this case was also unusually challenging because the documents were maintained with multiple different federal agencies and spanned multiple years.  *See Burlington Northern*, 408 F.3d at 1149 n.3 ("We are well aware that, particularly in discovery-intensive litigation, compiling a privilege log within 30 days may be exceedingly difficult, even for counsel

---

[5] Nor did Defendants' failure to formally object and assert privileges within the time to respond to Plaintiffs' requests for production result in a waiver.  In resolving the parties' informal discovery dispute, the Court directed Defendants to produce a written response "with all objections to the ***production*** of requested documents deemed waived." (Doc. 101 at 2) (emphasis added).  The Court did not order Defendants to produce the requested documents unredacted and did not deem their assertions of privilege and ability to redact produced documents to be waived.  (*See* Docs. 101, 105.)  In accordance with the Court's Order, Defendants have not withheld documents or categories of documents based on assertions of privilege but have simply produced certain documents with privileged material redacted.

who are sophisticated, experienced, well-funded, and acting in good faith"); *see also Henry*, 2018 WL 1638255, at *3 ("[W]here, as here, the first set of responses to discovery included that production of documents would occur subject to a protective order, there is no basis to argue waiver.")

Further, the Court finds the consequences of waiver in this case would be exceedingly harsh based on the nature of the information at issue. *See Liguori*, 2012 WL 760747 at *11. For example, much of the redacted information involves sensitive investigative procedures and the identities of targets, subjects, and witnesses in criminal immigration investigations. (*See* Doc. 106-1 at 2-7.) Many of the redactions also protect personal identifying information—including alien numbers,[6] passport numbers and social security numbers—and other personal information of individuals that have nothing to do with this case. (*See, e.g.,* Doc. 106-1 at 2.) Finally, Plaintiffs have not shown any specific prejudice they have suffered by the delay in production of the privilege log. *See Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 91 (D.D.C. 2005) (determining the plaintiff did not waive objections in part because the opposing party suffered no prejudice from the delay).

Accordingly, under the circumstances the Court finds Defendants' motion for a protective order is timely, and Defendants have not waived assertions of privilege and Privacy Act protections regarding the redacted information at issue.

**B.     Defendants Have Shown Good Cause for a Protective Order**

**1.     Contentions of the Parties**

Defendants represent in the motion that they have produced approximately 1,300 documents to Plaintiffs, of which approximately 360 documents contain redactions. (Doc. 106 at 2.) As stated above, Defendants produced copies of the redacted documents and a privilege log to the Court and Plaintiffs' counsel on June 7, 2019. (*See* Doc. 105 at 4.)

Defendants contend good cause exists to grant a protective order due to the need to keep

---

[6] An alien number is a unique registration number assigned by USCIS to a noncitizen of the United States.

confidential information protected by the Privacy Act, 5 U.S.C. § 552a(b), and the deliberative process, law enforcement, and attorney-client privileges.[7] (Doc. 106 at 3.) Defendants contend that the documents at issue, which include alien files[8] and the investigative report regarding former immigration officer Billy Nelms contain information covered under the Privacy Act, including social security numbers, dates of birth, places of birth, alien numbers, passport numbers, phone numbers, and tax information, which are precluded from disclosure. (*Id.* at 4.) Defendants assert that the need for protection of this information is greater here because much of the information pertains to third parties and that use of this information beyond this litigation would harm their privacy interests. (*Id.* at 5.) Next, Defendants contend that certain produced documents contain information covered by the law enforcement privilege, including details of USCIS fraud investigations, statements of findings, procedures and timelines in fraud investigations, results of various investigations, and details of ongoing fraud investigations. (*Id.*) Defendants assert public disclosure of this information would result in harm to law enforcement and ongoing investigations by revealing confidential investigative procedures. (*See id.*) Defendants contend within the produced alien files is information concerning details of internal agency recommendations and deliberations in immigration adjudications, public disclosure of which would impair the agency decision-making process. (*Id.* at 5-6.)

Defendants further contend that the terms of the proposed protective order "strike a fair balance" between the parties' interests and "do[] not prevent the release of information to Plaintiffs to fully develop its case before the Court." (Doc. 106 at 6.) Defendants assert that the proposed protective order does not impede on the factfinding process and does not limit the scope of discovery in the case, and importantly does not limit Plaintiffs' use of any discovery material for the purposes of this litigation. (*Id.* at 6-7.)

Plaintiffs respond that Defendants have not shown good cause for a protective order and

---

[7] Defendants attached a privilege log identifying each redaction and describing the content and basis for each redaction. (Doc. 106-1.) Defendants assert in the motion that although they are "prepared to justify" each specific redaction to the Court based on the asserted privileges, they discuss the redactions and "articulate specific examples" in the motion in general terms sufficiently to "establish the required good cause for" a protective order. (Doc. 106 at 3 n.3.)

[8] An alien file is an individual file on a noncitizen of the United States maintained by USCIS and identified by the subject's alien number.

provided in their motion only "broad conclusory statements" of harm to justify the asserted redactions. (Doc. 108 at 17.) Plaintiffs contend that Defendants have not shown the applicability of the law enforcement privilege to the information at issue because the privilege does not cover information related to "individuals involved in the investigation" and because the privilege does not apply to information related to closed investigations. (*Id.* at 19-20.) Plaintiffs further contend that Defendants have not shown the applicability of the deliberative process privilege and that disclosing the information redacted here would not harm the governmental interest in protecting information related to agency deliberation. (*Id.* at 20-21.) Finally, Plaintiffs contend that Defendants have not shown that information should be redacted due to privacy concerns and that the privacy interests involved can be addressed without a protective order. (*Id.*)

Defendants reply that Plaintiffs "incorrectly assume" Defendants' burden to show good cause for a protective order is the same as the burden to establish privileges. (Doc. 110 at 2.) Defendants contend that Plaintiffs conflate the two burdens, and that Defendants' motion does not assert privilege or attempt to meet the burden for establishing privilege, such that Defendants could withhold access to the material from Plaintiffs, but simply seeks a protective order "*that would permit Plaintiffs access to this sensitive, potentially privileged, non-public information* while simply shielding it from further public exposure." (*Id.* at 4.) (emphasis in original). Defendants contend that the proper standard is not whether they have established a claim of privilege, but whether "there exists good cause to limit disclosure of this information to the parties … and to limit the use of this information to this litigation." (*Id.*) Defendants further assert that Plaintiffs failed to rebut Defendants' arguments that public disclosure of the information would harm private interests and the protective order is a fair balance of the parties' interests. (*Id.* at 4-5.)

### 2. Legal Standard

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. United States District Court-Northern District*, 187 F.3d 1096, 1103 (9th Cir. 1999); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). Rule 26(c) of the Federal Rules of Civil Procedure governs protective orders and "authorizes a district court to override this presumption where 'good cause' is shown."

*San Jose Mercury News*, 187 F.3d at 1103. Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *See Davis v. Calvin*, No. CIV S-07-1383 FCD EFB P, 2008 WL 4643291, at *1 (E.D. Cal. Oct. 20, 2008) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

The party seeking limitations on discovery must show good cause for the issuance of a protective order under Rule 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-11. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Even if it is determined that particularized harm will result from disclosure, the Court still must balance the public and private interests at stake to decide whether a protective order is necessary. *See Phillips*, 307 F.3d at 1211 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). The Ninth Circuit has directed district courts conducting this balancing test to consider factors identified by the Third Circuit in *Glenmede Trust Co*. *See Phillips*, 307 F.3d at 1211. These factors include: (1) whether disclosure will violate any private interests; (2) whether the information is being sought for a legitimate or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Glenmede Trust Co.*, 56 F.3d at 483.

"While blanket protective orders are usually based on a joint request of the parties—and courts generally expect such cooperation among litigants—the agreement of all parties is not required so long as certain conditions are met." *Henry*, 2018 WL 1638255, at *2 (citation omitted). These conditions include: (1) "the party requesting the protective order must 'make some threshold showing of good cause to believe that discovery will involve confidential or protected information,' which 'may be done on a generalized as opposed to document-by-document basis"; (2) the parties

"must agree to only invoke designation in good faith"; and (3) "the party receiving documents must have the right to challenge the confidentiality designations assigned to documents." *Id.* (citations omitted).

### 3. Analysis

Here, as an initial matter, the standard to be applied is the good cause standard for issuance of a protective order.[9] *See Henry*, 2018 WL 1638255, at *2. The Court has reviewed the redacted documents and the privilege log. Based on the Court's review, it appears that most of the redacted information relates to nonparties to the case and information that would be required to be redacted by Local Rule 140 in any event, including social security numbers and dates of birth. *See E.D. Cal. L.R. 140(a).* Defendants have shown that particularized harm will result from public disclosure of this information. The information sought to be protected involves sensitive investigative and deliberative information, disclosure of which could harm law enforcement efforts and agency determinations in immigration enforcement. (*See* Doc. 106-1 at 2-7.) Further, the public release of personal identifying information—including alien numbers, passport numbers, social security numbers, and other information—of individuals who are completely unrelated to this case, would harm those individuals.[10] (*See, e.g.,* Doc. 106-1 at 2.)

As to the balancing test, the factors in *Glenmede Trust Co.* weigh in favor of issuing a protective order. In particular, disclosure of the information will harm private interests of third parties totally unrelated to the case; Plaintiffs appear to be seeking the information mostly for use in other matters—as evidenced by their objection to a provision limiting use of information to this litigation; disclosure of the information will cause embarrassment to third parties not involved in the case; and the sharing of information among litigants will not be affected by a protective order as no documents are sought to be withheld. *See Glenmede Trust Co.*, 56 F.3d at 483. Finally, the entry

---

[9] If a protective order is entered, Plaintiffs are free to object to the designation of any information as confidential material, and challenge any assertion of privilege, by the mechanism provided in the protective order. (*See, e.g.,* Doc. 107 at 4 ("If any Party objects to the designation of any information … as Confidential Material … the objecting Party may notify the designating Party in writing at any time, but no later than twenty-one (21) days before the date of trial …")) The Court is not, however, determining whether Defendants have established the applicability of certain privileges at this point, but only whether good cause exists to enter a protective order.

[10] Plaintiffs note in their opposition that they can obtain a "stipulation … from their immediate blood relatives that there are no privacy issues[.]" (Doc. 108 at 22.) However, that would not resolve the issue as much of the information is related to individuals that have nothing to do with this case or Plaintiffs. (*See* Doc. 106-1 at 2.)

of a protective order strikes an appropriate balance between Plaintiffs' need for unredacted documents to fully develop their case before this Court and the interest in protecting from public disclosure confidential and sensitive information. *See Phillips*, 307 F.3d at 1211.

Accordingly, the Court finds Defendants have shown good cause to enter a protective order.

## C.     The Court Approves Defendants' Proposed Protective Order in Part

Plaintiffs object to the inclusion of terms in the proposed protective order limiting use of discovery material to this litigation and allowing the designation of certain material as "Attorney's Eyes Only." (Doc. 108 at 23.) Plaintiffs contend that these "gag and blindfold" provisions in the proposed protective order would "force Plaintiffs against their will to not reveal … documents they have received … (a gag) and would also require Plaintiffs' attorney[] to refuse to disclose information to his own clients … (a blindfold)." (*Id.*) Plaintiffs contend that while it may be "a helpful gesture to the government" to include these provisions, a protective order with such provisions is not "normative" and "runs counter to expectations." (*Id.*) Plaintiffs further contend that "no ethical attorney" should ever accept a provision allowing designation of discovery materials as "Attorney's Eyes Only," because it "sets up a potential conflict" between the attorney and his clients. (*Id.* at 23-24.) Finally, Plaintiffs request that if the Court deems entry of a protective order appropriate, Plaintiffs be given at least three days to a submit their own proposed protective order, even though they think doing so in three days is "well nigh impossible." (*Id.* at 24.)

Defendants contend that Plaintiffs' argument against including a term in the protective order limiting use of discovery material to this litigation is without merit. (Doc. 106 at 7.) Defendants contend there is no legal authority stating the court should consider the opposing party's desire to use information in other matters beyond the current litigation in deciding the merits of a protective order. (*Id.*) Defendants further contend a term limiting use of protected information only for purposes of the litigation is a "commonly provided" term and that courts focus on the need for

discovery in the current litigation for a fair resolution. (*Id.*) Defendants do not address the proposed "Attorney's Eyes Only" provision in their motion or reply.

The Court has reviewed Defendants' proposed protective order and finds that it is suitable for entry, except for the "Attorney's Eyes Only" provisions. "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Phillips*, 307 F.3d at 1211 (quoting *Seattle Times Co.*, 467 U.S. at 36). "Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Id.* (citation omitted). A party seeking to include a provision limiting use of discovery material to the current litigation, or any other provision limiting access to discovery material, necessarily must show good cause. *See id.* at 1210-11.

Here, the Court finds Defendants have shown good cause to include a provision limiting use of discovery material to this litigation. Including such a provision will ensure that the privacy interests of the many individuals whose information is scattered throughout Defendants' production are protected. (*See, e.g.,* Doc. 106-1 at 2.) Further, contrary to Plaintiffs' assertion, these provisions are routinely included in protective orders in civil cases, and are generally accepted as preserving both parties' interests. *See, e.g., Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) ("protective orders commonly provide … that the material may be used on in connection with the litigation at hand[.]")

As to the "Attorney's Eyes Only" provisions, however, Defendants have made no showing as to why those provisions should be included, and provided no explanation as to the necessity of treating certain information as "Attorney's Eyes Only" as opposed to simply "Confidential." Further, Plaintiffs' counsel notes in his declaration that Defendants previously offered to remove those provisions (Doc. 108-1 at 5), and Defendants do not deny that assertion. Thus, the Court finds

Defendants have not shown good cause to include the "Attorney's Eyes Only" provisions.[11]

Based on the foregoing, the Court will enter Defendants' proposed protective order with the following modifications: (1) removing all references to designation of discovery material as "Attorney's Eyes Only" (*see* Doc. 107 ¶¶ 3-7, 9-10); (2) replacing "Defendants" with "the designating party" in reference to designation of material as "Confidential" (*see id.* ¶ 3); and (3) adding a provision explaining the need for a court order as opposed to a private agreement between the parties, in compliance with Local Rule 141(c)(3).

### III.    CONCLUSION AND ORDER

Accordingly, it is HEREBY ORDERED:

1.     Defendants' Motion for a Protective Order (Doc. 106) is **GRANTED in part and DENIED in part**.

2.     The Court will enter the protective order with the modifications set forth in this Order under separate notice of filing.

3.     Defendants shall produce all previously produced, redacted documents to Plaintiffs in unredacted form **by no later than June 28, 2019**.


IT IS SO ORDERED.

Dated:   __**June 21, 2019**__                      _____/s/ *Sheila K. Oberto*_____
                                                                            UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiffs' request to submit a separate proposed protective order is unnecessary and will be denied, as Plaintiffs provided sufficient information in their opposition regarding their desired changes, including removing the "Attorney's Eyes Only" provisions, and in the interest of moving the case forward, in view of the impending discovery deadline on July 15, 2019. (*See* Doc. 108 at 24.) Plaintiffs also contend a protective order may interfere with their "right to obtain a complete nonarbitrary production[.]" (*Id.*) Defendants have represented that all responsive documents have been produced (*see, e.g.,* Doc. 101 at 2), but in any event the entry of this protective order does not prevent Plaintiffs from seeking relief from the Court if they believe responsive, relevant documents are being withheld.