# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEANLIM YITH and SEAK LEANG YITH, <br><br> Plaintiffs, <br><br> v. <br><br> CHAD F. WOLF, *et al.*, <br><br> Defendants. | Case No. 1:14-CV-01875-LJO-SKO <br><br> **MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' MOTIONS IN LIMINE** <br><br> Bench Trial: January 7, 2020 |

On November 13, 2019, Plaintiffs Seanlim Yith and Seak Leang Yith ("Plaintiffs") filed three substantively related motions in limine. ECF No. 120. On November 22, 2019, Defendants[1] filed their opposition to the motions. The bench trial is set for January 7, 2019, and is estimated to take one to two (1-2) days. ECF No. 119 at 2. The matter is before the Court pursuant to 8 U.S.C § 1447(b) due to United States Citizenship and Immigration Services' ("USCIS") failure to make a determination on Plaintiffs' naturalization applications within 120 days after the Plaintiffs' examination.[2] Plaintiffs are siblings and

---

[1] Defendants in this matter are Chad F. Wolf, in his capacity as Acting Secretary for Department of Homeland Security; Kenneth T. Cuccinelli, in his capacity as Director for U.S. Citizenship and Immigration Services; Monica E. Toro, in her capacity as District Director U.S. Citizenship and Immigration Services; Lynn Q. Feldman, in her capacity as Director of Fresno Office of U.S. Citizenship and Immigration Services; and William P. Barr in his capacity as Attorney General of the United States.

[2] This Court previously denied the USCIS's motion to remand the matter to the agency and in that Order recounted in detail both the factual and procedural background of this case. *See* ECF No. 88. The Court will only repeat those facts which are

1

citizens of Cambodia and entered the United States in 2006 as children ages 14 and 11 at the time. ECF No. 88 at 2. The trial asks the Court to make a determination on whether Plaintiffs have met the requirements for naturalization such that their naturalization applications should be granted. Furthermore, it appears the only naturalization requirement that is in dispute is whether Plaintiffs can demonstrate that they were *lawfully* admitted for permanent residence at the time they were admitted as permanent residents. Defendants contend that Plaintiffs were inadmissible at the time they were admitted as permanent residents because their approved petitions for admission were based on the invalid marriage of Plaintiffs' father, Neth Yith, and Sarin Meas, a U.S. citizen and Plaintiffs' stepmother. ECF No. 121 at 2. Plaintiffs motions in limine appear to take the position that the question of whether or not their father's marriage was valid should have no bearing on question of whether they were "lawfully admitted" for the purposes of naturalization requirements since they were children at the time they entered the United States and had no knowledge concerning the marriage one way or the other and have no ability to prove its validity at this point in time. *See generally* ECF No. 120.

Plaintiffs' motions in limine essentially ask the Court to define the legal contours of what evidence Plaintiffs must present to meet their burden of proof under 8 U.S.C § 1429 to show that they have been "lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter" in order to satisfy one of the prerequisites for naturalization. 8 U.S.C. § 1429. ECF No. 120 at 6. The motions in limine all revolve around this one discrete element of Plaintiffs' eligibility for naturalization. *Id.*[3]

The requirements for naturalization are set forth at 8 U.S.C. § 1427. To be eligible for naturalization, an applicant must show, among other things, that he has been "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a)(1); *see also* 8 C.F.R. § 316.2(a)(2). Additionally, 8 U.S.C.

---

pertinent for the purposes of these motions and otherwise incorporates the background from that Order herein.

[3] None of the other criteria for naturalization are at issue in the motions in limine and do not appear to be disputed issues for trial either. *See* Joint Pretrial Statement, ECF No. 119 at 5-7.

§ 1429 further elaborates on the prerequistes for naturalization and allocates the burden of proof for naturalization. The statute provides:

> [N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service.

8 U.S.C. § 1429. The burden of proof is on the applicant to show his eligibility for citizenship, including the requirement that the applicant has been "lawfully admitted to the United States for permanent residence" *Id.*; *see also Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967) ("it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect."). The applicant generally meets this burden if he shows by a preponderance of the evidence that he has satisfied all of the requirements to become a United States citizen. *See* 8 C.F.R. § 316.2(b) ("The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident to the United States…"). The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). "[T]here must be strict compliance with all congressionally-imposed prerequisites before an applicant may acquire citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). Generally, doubts regarding eligibility should be resolved in favor of the United States. *Berenyi*, 385 U.S. at 637.

Plaintiffs' first motion in limine asks the Court to find that the statutory burden of proof on Plaintiffs to prove that they were lawfully admitted as permanent residents is met by proving their lawful entry after having been granted permanent resident status. Plaintiffs argue that if the Court does not make

3

such a ruling on the motion in limine there is a possibility that their due process rights may be impaired and that they would also be exposed to unfair prejudice under Federal Rule of Evidence 403. ECF No. 120 at 8. Plaintiffs state that their procedural due process rights would be implicated if they are precluded from meeting their burden of proof for naturalization by factors that are not within their control or right of access. *Id.* at 6. Plaintiffs further submit that if the Court does not grant this motion in limine they would be required to prove a negative in the course of proving they were lawfully admitted such that they would be required to show that their admission was not dependent on marriage fraud and/or fraud by a USCIS officer. *Id.* at 7. Plaintiffs argue the proposed in limine rulings would prevent any potential constitutional issues from arising with respect to the two statutes, 8 U.S.C. §§ 1427 and 1429. *Id.* at 8.

Plaintiffs' second motion in limine parallelly argues that the Court should exclude testimony and documentary evidence other than testimony and evidence showing that Plaintiffs were given documentation by the USCIS establishing their legal permanent resident status, that they never abandoned that status, and that no administrative or judicial determination has ever altered that status. ECF No. 120 at 17. This argument turns in part on Plaintiffs' contention that an evidentiary exclusion should apply to any evidence of a nonparty's actions of fraud except for third party actions for which there has been a final determination after a full and fair opportunity to litigate in either an administrative or judicial proceeding. *Id.* at 9. Plaintiffs argue that this is necessary so that Plaintiffs are not penalized for the wrongdoing of a third party who is not a party to this proceeding such that constitutional due process problems arise. *Id.* "[F]or reasons of procedural due process the litigant should never be placed in the position of having to prove, in order to spare himself his own penalty, that another individual did not commit fraud." *Id.* at 25. While Plaintiffs' first motion in limine deals with what Plaintiffs need to produce to meet their burden to show that they were lawfully admitted, the second is not any different in that it also revolves around the same legal issue and requests the Court exclude any evidence that does not comport with their request in the first motion in limine. These two motions go hand in hand.

As Plaintiffs' third motion in limine, they submit if the prior two motions are denied, the Court

4

1 should at the very least implement a burden shifting framework with respect to the lawfully admitted
2 requirement. Specifically, the Plaintiffs request that once they establish that their permanent resident
3 status was granted before entering the U.S. and that they never abandoned or were stripped of that status,
4 "that the burden of proof (preferably) or at least the burden of production (less preferably) will shift to
5 Defendants to show that Plaintiffs were not lawfully admitted as permanent residents." ECF No. 120 at
6 27. Plaintiffs contend that if the Court does not grant this motion they would be forced into untenable
7 speculation about all the different reasons why Defendants might say their admission was unlawful. *Id.*
8 Plaintiffs indicate that they know little about what Defendants will claim proves the unlawfulness of their
9 admission. *Id.* at 28.

10 In opposition, Defendants submit that Plaintiffs have not met the high standard for excluding
11 evidence pre-trial, particularly since this is a bench trial. ECF No. 121 at 3. Defendants point out that two
12 of the main purposes of motions in limine, protecting the jury and saving time, are not served in this case.
13 *Id.* Defendants argue that any evidentiary ruling should be deferred until trial so that the "questions of
14 foundation, relevancy and potential prejudice may be resolved in proper context." ECF No. 121 at 6
15 (quoting *Mitchell v. Rosario*, No. 2:09-CV-03012-RCJ, 2015 WL 6706776, at *2 (E.D. Cal. Nov. 2,
16 2015)). Additionally, Defendants submit that the Plaintiffs' proposed in limine rulings are not in accord
17 with the statutory text or relevant case law. *Id.* at 8-14. The Court agrees with Defendants that its time
18 and effort is more efficiently used by addressing objections to actual evidence submitted at trial rather
19 than making a preemptive general ruling on the motions in limine about evidence the Defendants may or
20 may not present. Plaintiffs' generalized and blanket motions in limine are not effective tools for limiting
21 evidence that very well may be required for Plaintiffs to meet their burden to establish one of the
22 requirements for naturalization – lawful admission.

23 In addition, Plaintiffs' positions in the motions in limine are not well supported by authority.
24 Plaintiffs' proposal in their first motion in limine that they must only show lawful entry after being
25 granted permanent residence, presumably by simply presenting their legal permanent resident card, is not

5

what the statutory text nor controlling case law provides. *Monet v. I.N.S.*, 791 F.2d 752, 753 (9th Cir. 1986) ("[A] narrow reading of the term 'lawfully admitted' distorts its meaning. Admission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity, ....") (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir.1983), *cert. denied*, 467 U.S. 1219 (1984)); *Jin Mei Lin v. Napolitano*, No. CIV.A. 11-6373, 2013 WL 2370588, at *4 (E.D. Pa. May 31, 2013), *aff'd sub nom. Jin Mei Lin v. Sec'y U.S. Dep't of Homeland Sec.*, 613 F. App'x 207 (3d Cir. 2015) (holding that petitioners' contention that their admission as legal permanent residents was sufficient to meet the statutory requirements for naturalization regardless of whether their admission was in compliance with the substantive legal requirements for such admission was "contrary to clearly defined law, and d[id] not warrant judgment in Petitioners' favor") (citing *Martinez v. Att'y Gen. of the U.S.,* 693 F.3d 408, 414 (3d Cir. 2012)). As the Defendants have pointed out in their opposition and as the Court's review of the cited cases indicates, "[t]he overwhelming caselaw establishes that a grant of permanent resident status is not dispositive of th[e] requirement" of determining whether an alien has been *lawfully* admitted for naturalization eligibility. ECF No. 121 at 2.

The Board of Immigration Appeals has found that an alien has not been "lawfully admitted for permanent residence" where he "obtained [his] permanent resident status by fraud, or had otherwise not been entitled to it." *In re Koloamatangi*, 23 I & N Dec. 548 (BIA 2003). The Ninth Circuit has also adopted this interpretation along with several other circuits. *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010); *Lucaj v. Dedvukaj*, 13 F. Supp. 3d 753, 766 (E.D. Mich. 2014) ("Several circuits have relied on *Koloamatangi's* interpretation of 'lawfully admitted for permanent residence' and have consistently held that to be 'lawfully admitted for permanent residence' requires that the person have complied with the substantive legal requirements in place at the time he or she was admitted") (collecting cases). Plaintiffs' arguments to the contrary are unpersuasive and they have not provided legal authority to support their position. One of the major distinctions Plaintiffs attempt to make of the facts of their case with other cases is that they personally did not commit any fraud and had no knowledge of any fraud

since they were children when they were admitted. However, the Ninth Circuit has found that this distinction of personal involvement makes no difference when determining whether someone was "lawfully admitted." *See Shin*, 607 F.3d at 1217 ("Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void ab initio."). Plaintiffs' attempt to differentiate *Shin* fails. ECF No. 120 at 15. Plaintiff has not provided a convincing reason for how this case can be differentiated from the cited cases and also appears to ignore the statutory language itself by making a due process and unfair prejudice argument. Neither the statutory text nor case law interpreting it supports Plaintiffs' argument that they must only present evidence of their lawful entry to meet their burden.

Plaintiffs' argument that they would have to prove there was "no unlawfulness[,]" involved in their grant of permanent residence, which Plaintiffs refer to as a requirement to prove a negative, is also a mischaracterization. ECF No. 120 at 12-13. Plaintiffs do not need to prove a negative but rather must prove they were lawfully admitted. Here, Plaintiffs received their permanent residence status on the basis that they were the stepchildren of U.S. citizen Sarin Meas. A stepchild relationship must be based on a marriage that was at some point valid. *See Matter of Awwal*, 19 I. & N. Dec. 617, 621 (BIA 1988) ("[A] marriage which is a sham from the outset cannot form the basis for a steprelationship under [the INA]."); *see also Matter of Teng*, 15 I. & N. Dec. 516, 519 (BIA 1975) (concluding the same and also finding "[t]he fact that the respondents may be innocent of any fraudulent intent does not protect them."). In the case where the validity of a marriage is at issue, the applicant must present sufficient evidence that the marriage was bona fide in that it was "not sham or fraudulent from its inception." *Agyeman v. I.N.S.*, 296 F.3d 871, 883 (9th Cir. 2002) (detailing types of evidence that may prove bona fides of marriage besides spouse's testimony including joint tax returns, shared bank accounts or credit cards, or telephone bills). The key issue in determining whether a marriage is valid is whether the parties intended to establish a life together when they exchanged marriage vows. *Bark v. I.N.S.*, 522 F.3d 1200, 1202 (9th Cir. 1975);

*Damon v. Ashcroft*, 360 F.3d 1084, 1089 (9th Cir. 2004) ("The sole inquiry in determining whether a marriage was entered into in good faith is whether the parties intended to establish a life together at the time of marriage."). Post-marriage conduct may also be relevant insofar as it reveals the parties' intent at the time they married. *Bark*, 522 F.3d at 1202. Plaintiffs' burden here is not to prove a negative or to rebut every potential possibility of fraud that the government may present but to show that they were lawfully admitted.[4]

Plaintiffs do not cite to any case that supports their position that a stepchild's lack of wrongdoing or lack of direct knowledge mitigates the requirement of establishing Plaintiffs' lawful admission as permanent residents.[5] While the facts of this case do appear to be somewhat unique, the legal issues that Plaintiffs seeks to have addressed have been dealt with by other courts, including the issue of when a naturalization applicant is not guilty of and unaware of any wrongdoing by a third-party. *See, e.g.*, *Jin Mei Lin*, No. CIV.A. 11-6373, 2013 WL 2370588, at *3-*4 (finding Plaintiffs stepchildren could not demonstrate their eligibility for naturalization because their father's marriage was not a bona fide marriage and granting summary judgment to the government "notwithstanding [the fact] that the stepchildren may be innocent of any fraudulent intent.").

Plaintiffs' second motion requesting exclusion of evidence besides evidence of their initial legal permanent residence status fares no better than their first motion. Plaintiffs argue that forcing them to have to disprove the fraudulent intent of another individual who is not a party, at the risk of penalizing themselves, would violate the standards of procedural due process. Alternatively, Plaintiffs argue that

---

[4] Plaintiffs concerns that in their case in chief they will need to predict and rebut ever potential fraud allegation Defendants may present is exaggerated in that the Defendants issued notices of intent to deny Plaintiffs' naturalization applications laying out the reasons why they intended to deny the applications. See ECF No. 88 at 4.

[5] Plaintiffs' motion states that "Plaintiffs realize that there are a number of other decisions on what must be proved by an alien to prove his 'lawful admission for permanent residence' that do not recognize the distinction they are urging here" but they summarily submit that this case is distinguishable from all those case either because those cases did not deal with naturalization under section 1429 or because they were incorrectly decided. ECF No. 120 at 16. However, the Court is unable to find that these cases were incorrectly decided or that their holdings are not applicable solely because they did not deal with § 1429 as Plaintiffs have not made any convincing arguments for the Court to so find.

this would be a prudential limitation for the purposes of Federal Rule of Evidence 403 because of the unfair prejudice to Plaintiffs if their due process premise is not accepted. ECF No. 120 at 17. The Plaintiffs further argue that limiting the evidence as suggested in their second motion in limine would mean that the trial would likely take more than the two days allotted in that there would have to be multiple sub-cases within this case concerningother non-parties' fraud, namely Plantffs' father, Neth Yith's, marriage to their stepmother, Sarin Meas, solely for the purpose of gaining an immigration benefit. *Id.* at 17-18. Plaintiffs also believe "the government may be thinking it can prove that a wrongful act regarding Plaintiffs' file by another individual, Billy Nelms, a Fraud Detection and National Security officer for DHS, preceded the admission of Plaintiffs to permanent residence." ECF No. 120 at 18. However, Plaintiffs have not articulated clearly how their due process rights would be violated if they are required to comply with the statutory dictates of 8 U.S.C. § 1429 and prove that they were "lawfully admitted," particularly when both their father and stepmother have been accessible for discovery.[6] In this case both Neth Yith and Sarin Meas were disclosed as persons likely to have discoverable information and both were deposed. ECF No. 121 at 5, n. 1. As for Billy Nelms, he does not appear on the Defendants' witness list and the Court declines to make a limiting ruling at this stage of the proceeding based on the speculation that the Defendants may present evidence that this USCIS officer committed fraud with respect to Plaintiffs' legal permanent resident status.

While the Court is sympathetic to the situation the Petitioners are in, it is constrained to follow the law as written and interpreted by the Ninth Circuit. Courts cannot use equitable legal doctrines to excuse an applicant's failure to meet all of the statutory requirements for naturalization. *INS v.*

---

[6] Plaintiffs' argument concerning the potential unfair prejudice under Federal Rule of Evidence 403 also does not strike the Court as particularly convincing or relevant in this matter. *See Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("This portion of Rule 403 has no logical application to bench trials. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure."); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (referring to the *Gulf* court's statement as "extreme" but also noting that risk that a verdict will be unfairly affected in a bench trial is far less than in a jury trial).

*Pangilinan*, 486 U.S. 875, 883-85, (1988); *see also Lin,* 2013 WL 2370588, at *5 ("Because Petitioners' arguments do not alter the fact that they have not proven their eligibility to naturalize, their equitable assertions are irrelevant."). While more concrete evidentiary or due process considerations at trial may lead to different rulings in specific instances, at this stage, the Court is unable to grant Plaintiffs' request for preemptive and broad relief in the proposed evidentiary rulings.[7]

Plaintiffs must prove that they were "lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter" and this includes presenting evidence of more than just procedural regularity in their admission. Plaintiffs must meet their burden through some type of evidence of a legitimate marriage forming the basis of their admission. At that point the Defendants must provide evidence to refute Plaintiffs' evidence and if necessary, Plaintiffs will have an opportunity to rebut such evidence just as the regular trial process provides.

For the foregoing reasons, Plaintiffs' motions in limine, ECF No. 120, are denied as setforth herein. The Court will consider evidentiary objections at trial based on specific, concrete issues that arise rather than making general declarations of law on evidence the Defendants may or may not present at trial.

IT IS SO ORDERED.

Dated: __**December 6, 2019**__ _____/s/ Lawrence J. O'Neill_____
UNITED STATES CHIEF DISTRICT JUDGE

---

[7] Plaintiffs contend that the Defendants have lost certain records, including the immigration file of their father Neth Yith, that may have contained exculpatory evidence. ECF No. 120 at 9-10, 20. At this stage, the Court is unable to make an evidentiary ruling without more concrete information on what is being presented, the foundation, and relevancy to the proceedings.